## George C. Moody *versus* Jacob Rowell.

A deposition in which the witness testified that a professed imitation of the hand writing of his father, who was a public officer, bore a strong resemblance to the genuine handwriting, was *held* to be admissible, notwithstanding it was objected, that the witness had not laid a foundation for such an opinion, by stating that he had seen his father write; for if the party objecting had doubted, whether the witness was sufficiently acquainted with the handwriting of his father, he should have interrogated him directly as to his means of knowledge, when the deposition was taken.

Upon the question as to the genuineness of a signature, the genuine signature of the same person to a paper not otherwise competent evidence in the case, is admissible to enable the court and jury, by a comparison of the hands, to determine the question.

Upon the same question, the opinion of a writing-master, professing to have skill in detecting forgeries, formed from a comparison of hands, without any actual knowledge of the handwriting of the person whose signature is in controversy, is competent evidence.

The opinion of such witness, formed merely from an inspection of the contested signature, in regard to its being in a natural or a simulated hand, is competent evidence.

Upon the cross-examination of a witness, the court may, in its discretion, permit leading questions to be put, although relating to matters not inquired of upon the direct examination.

Assumpsit on a promissory note for the sum of $2750, dated November 1, 1828, payable to John Blaisdell junior, since deceased, or his order, in five years, with interest, and purporting to be signed by the defendant and indorsed by the payee.

The trial was before *Morton* J.

The defence rested on the ground, that the signatures of the defendant and of the payee were forged.

Henry H. Brown, who was called as a witness for the defendant, was examined as to the handwriting of the payee. On his cross-examination, the plaintiff examined him as to the handwriting of the defendant ; and a question was objected to as leading. The judge sustained the objection, and did not permit the plaintiff to cross-examine the witness as to the defendant's signature, he not having been questioned on that subject by the defendant.

The deposition of John Brown was offered in evidence by the defendant. This witness deposed, among other things, that two or three years before, he saw the plaintiff writing in

the office of the deponent's father, that the plaintiff prepared an imitation of the signature of the deponent's father ; that the deponent compared the imitation with a genuine signature of his father, where, as the deponent thought, his father had taken an acknowledgment of a deed ; and that he found the resemblance to be so strong, that he should have supposed that the imitation was a genuine signature, if he had not seen the plaintiff write it.

The plaintiff objected to this part of the deposition, because it did not appear, that the deponent had ever seen his father write. But the judge permitted it to be read to the jury.

Barnabas Whitney, a witness called by the defendant, testified that he had been a teacher of writing for more than forty years ; that he had written certain imitations of the defendant's signature, which had been presented to several witnesses examined as to the handwriting of the defendant ; that he had never seen the defendant write, and was not acquainted with his handwriting.

Whitney was permitted to give his opinion, founded on the comparison of handwritings merely, as to the want of genuineness of the defendant's signature to the note. The witness was also permitted to testify as to the want of genuineness of such signature, from the mere inspection of the note in question. The plaintiff objected to the admission of this evidence.

The verdict was for the defendant ; and the plaintiff moved for a new trial.

*Saltonstall* and *Choate*, for the plaintiff, to the point, that the opinion of Whitney formed on a comparison of handwritings merely, and without any actual knowledge of the defendant's handwriting, was inadmissible in evidence, cited *Eagleton* v. *Kingston*, 8 Ves. 473 ; *Rex* v *Cator*, 4 Esp. R. 117 ; *Cary* v. *Pitt*, Peake's Evid. (3d edit.) Append. 81 ; *Macferson* v. *Thoytes*, Peake's Cas. (Day's edit.) 20, and note ; *Clermont* v. *Tullidge*, 4 Carr. & Payne, 1 ; *Gurney* v. *Langlands*, 5 Barn. & Ald. 330 ; *Lodge* v. *Phipher*, 11 Serg. & Rawle. 333 ; *Bank of Pennsylvania* v. *Haldeman*, 1 Pennsyl. R. 181 ; *Titford* v. *Knott*, 2 Johns. Cas. 211 ;

*Vickroy* v. *Skelley*, 14 Serg. & R. 372 ; *Jackson* v. *Phillips*, 9 Cowen, 94 ; *Jackson* v. *Cody*, 9 Cowen, 140 ; *Jackson* v. *Brooks*, 8 Wend. 426 ; 4 Esp. R. (Day's edit.) 273, note ; to the point, that the opinion of the same witness founded on the mere inspection of the note, was also incompetent evidence, *Gurney* v. *Langlands*, 5 Barn. & Ald. 330 ; *Clermont* v. *Tullidge*, 4 Carr. & Payne, 1 ; *Bank of Pennsylvania* v. *Haldeman*, 1 Pennsyl. R. 181 ; 4 Esp. R. (Day's edit.) 273, note ; and to the point, that the opinions of cashiers of banks &c. as to the genuineness of bank notes are only admissible, where they are previously acquainted with the genuine signatures, *St.* 1818, *c.* 110 ; *Commonwealth* v *Carey*, 2 Pick. 47.

*Cushing*, for the defendant, to the point, that the party cross-examining a witness, is not authorized to put leading questions as to a matter not inquired of on the direct examination, cited *Davis* v. *Dale*, 1 Moody & Malk. 514 ; *S. C.* 4 Carr. & P. 335 ; *Reed* v. *James*, 1 Stark. R. 132 ; *Harrison* v. *Rowan*, 3 Wash. C. C. R. 580 ; *Ely* v. *Stewart*, 2 Atk. 44 ; *Morgan* v. *Brydges*, 2 Stark. R. 314 ; *Rex* v. *Brooke*, 2 Stark. R. 472 ; *Phillips* v. *Eamer*, 1 Esp. R. 357 ; *Ellmaker* v. *Buckley*, 16 Serg. & R. 72 ; to the point. that the ruling of the judge upon that subject, whether right or wrong, was not a ground for a new trial, it being a matter within his discretion, *Alderman* v. *French*, 1 Pick. 19 ; *Pierce* v. *Thompson*, 6 Pick. 193 ; Howe's Pract. 501 ; as to the objection to John Brown's deposition, on the ground that it did not appear that he had ever seen his father write, *Williams* v. *Williams*, 4 Maule & Selw. 498 ; *Potter* v. *Leeds*, 1 Pick. 309 ; *Anon.* 2 Pick. 165 ; to the point, that the opinions of experts are admissible in every branch of inquiry in a court of justice, *Rex* v. *Cator*, 4 Esp. R. 117 ; 1 Phill. on Evid. (6th edit.) 275, 276 ; 1 Stark. on Evid. (4th Amer. edit.) 54 ; 1 M'Nally, 329 ; 1 Lofft's Gilb. on Evid. 301 ; *Hathorn* v. *King*, 8 Mass. R. 371 ; *Dickinson* v. *Barber*, 9 Mass. R. 225 ; *Beckwith* v. *Sydebotham*, 1 Campb. 117 ; *Thornton* v. *Royal Exch. Ass. Co.*, Peake's Cas. 25 ; *Berthon* v. *Loughman*, 2 Stark. R. 258 ; to the point, that it is well settled, that the jury may form their judgment from a comparison of hands,

and that on the same ground the opinion of a witness founded on a similar comparison was admissible in evidence, *Homer* v. *Wallis*, 11 Mass. R. 312 ; *Hammond's case*, 2 Greenl. 33 ; *M' Corkle* v. *Binns*, 5 Binney, 340 ; *Farmer's Bank of Lancaster* v. *Whitehill*, 10 Serg. & R. 110 ; *Boman* v. *Plunkett*, 2 M'Cord, 518 ; *Myers* v. *Toscan*, 3 New Hampsh. R. 47 ; *Titford* v. *Knott*, 2 Johns. Cas. 211 ; *Haskins* v. *Stuyvesant*, Anthon's N. P. 79 ; *Goldsmith* v. *Bane*, 3 Halsted, 87 ; *Doe* v. *Tarver*, 1 Ryan & Moody, 141 ; *Solita* v. *Yarrow*, 2 Moody & Malk. 133 ; *Taylor* v. *Cook*, 8 Price's Exch. R. 650 ; *Griffith* v. *Williams*, 1 Crompt. & Jervis, 47 ; to the point, that the true test for determining upon the admissibility of the testimony of a witness in relation to this subject, is. whether he has adequate knowledge of the genuine handwriting, it being immaterial how such knowledge was acquired, *Gould* v. *Jones*, 1 W. Bl. 384 ; *Harrington* v. *Fry*, 1 Ry. & Moody, 90 ; *Titford* v. *Knott*, 2 Johns. Cas. 211 ; *Johnson* v *Daverne*, 19 Johns. R. 134 ; *Duncan* v. *Beard*, 2 Nott & M'Cord, 400 ; *Jackson* v. *Murray*, Anthon's N. P. 105 ; 2 Stark. on Evid. (4th Am. edit.) 651 *et seq.* ; to the point, that the opinion of Whitney formed from a mere inspection of the note was admissible, *Albee* v. *Daniels*, 2 Stark. on Evid. (4th Amer. edit.) 657, note ; *Cary* v. *Pit'* Peake's Evid. (3d edit.) Append. 81 ; *Goodtitle* v. *Braham*, 4 T. R. 497 ; *Rex* v. *Cator*, 4 Esp. R. 133.

SHAW C. J. delivered the opinion of the Court. In an action of assumpsit upon a promissory note, by the plaintiff as the indorsee, against the defendant as promisor, a verdict was returned for the defendant, and a motion is now made to set it aside and grant a new trial, on several exceptions stated in the report.

1. John Brown's deposition was given in evidence by the defendant, in which the deponent stated that a certain professed imitation of his father's handwriting, made by the plaintiff, bore a strong resemblance to his father's genuine hand ; and it was objected that he had not laid a foundation for such an opinion, by stating that he had seen his father write ; but notwithstanding the evidence was objected to, it was admitted. The Court are of opinion that this was cor-

*Moody*
*v.*
*Rowell.*

*April term*
*1836.*

rect. Where a son is speaking familiarly respecting the hand-writing of his father, especially one who was a public officer, and might be presumed to be accustomed to write, if neither of the parties chooses to ask him the direct question, it is to be presumed that he had seen his father write, or received letters from him, or transacted business with him, so as to have such knowledge of his hand, as to warrant him in giving an opinion. Had the adverse party doubted the fact, he might have put a direct question in his own interrogatories. The case might present a different question, if the witness were under a *vivâ voce* examination, because where the omission was suggested, if the party calling him should decline asking him the direct question as to his means of knowledge, it might create some suspicion ; but this inference does not arise, where the witness is not present.

But the question most discussed in the present case was, whether a witness, professing to have skill in the knowledge of handwriting, and to have made it a study to compare different hands to detect forgeries, may be permitted to give an opinion, that the paper in question was or was not written by the same person, whose hand is proved to have been set to a specimen exhibited, and whether he could give an opinion from mere inspection, whether the writing in question was a free, natural and genuine hand, or whether it was an imitated, and simulated hand.

These questions have been the subject of much controversy, and great diversity of opinion, both in England and in the courts of the various States of the Union, who have adopted the common law rules of evidence.

The controversy resolves itself into three questions :

1. Whether it is competent, in order to prove that a handwriting in question, is genuine or fabricated and forged, to give in evidence another signature of the same person, to a paper not otherwise competent evidence in the cause, to enable the court and jury, by an examination, and comparison of the genuine specimen with the controverted one, to form an opinion whether the latter be or be not genuine.

2. Whether it is competent to call a witness, professing to have knowledge in handwriting and skill in detecting forgeries,

to give an opinion to the jury, founded on a comparison, without any personal knowledge of the actual handwriting of the party whose signature is in controversy.

*Moody v. Rowell.*

3. Whether it is competent to call a person professing like skill and knowledge, to give an opinion to the jury, from a mere inspection of the controverted hand, whether it is a free, natural and genuine hand, or a stiff, artificial and imitated one.

As to the first, we consider the question entirely settled, in this Commonwealth. *Homer* v. *Wallis*, 11 Mass. R. 309. And the same rule has been adopted in Maine. *Hammond's case*, 2 Greenl. 33. The point has been settled by a long course of practice and judicial decision, and we are not at liberty to depart from it. Some of the reasons given for the adoption of a contrary rule in England, are now obsolete and certainly do not apply here ; the leading one is, that jurors may not be able to write or read, and so would not be competent to decide upon such evidence. One reason for allowing no person to attest to the belief of another's handwriting being genuine, unless he had seen him write, was, that it at least ensured proof that the party was capable of writing. But that proof might be easily furnished *aliunde*, and must in fact be given, by proof of the genuineness of the standard offered for comparison, which must be direct to the fact of its having been actually written by the party, by one who saw him write it. Besides, in England, that reason was got over, when it was admitted that an opinion might be given, by one who had corresponded with the party, but had never seen him write. *Lord Ferrers* v. *Shirley*, Fitzgib. 195 ; *Titford* v *Knott*, 2 Johns. Cas. 211.

The same species of evidence has been constantly received in this State, upon questions respecting the genuineness of bank notes. Cashiers, tellers and clerks of banks, are allowed to testify whether, in their opinions, the signatures of presidents and cashiers to bank notes, are forged or genuine, without having seen them write, from the knowledge and skill they have acquired in the constant practice of receiving and paying out such bank notes, in the course of their business. *Commonwealth* v. *Carey*, 2 Pick. 47.

The rule is now, it must be admitted, settled otherwise in England ; though in a very recent case, where two papers bearing the genuine signature of the party, had been given in evidence, it was held, that the court and jury might compare a contested signature of the same party with them, as proof bearing upon the question of genuineness, and in fact the case was decided upon an elaborate comparison between the paper admitted to be genuine, and the one contested. *Griffith* v. *Williams*, 1 Crompton & Jerv. 47. But it seems to be difficult to distinguish in principle, between the case of a paper admitted or proved to be genuine, given in evidence for another purpose, and a paper, the genuineness of which is equally well established, when offered for this express purpose. In both cases, the result depends upon ·skill and judgment in making the comparison and discovering the resemblances and differences.

2. As to the second question, whether persons of skill can be called to give evidence of opinion, as to the identity or difference of admitted or proved specimens, with the signature in controversy, I consider it in effect settled by the first. It is a question of skill and experience, depending upon a practised eye, experience, judgment and habit, arising from being constantly employed to examine signatures and detect forgeries. It was so considered by Mr. Baron *Hotham*, in his learned judgment in *Rex* v. *Cator*, 4 Esp. 117. Having come to the conclusion, that comparison of hands was not competent evidence, he considered it to follow as a necessary conclusion, that the opinion of one who could judge only by making such comparison, was equally inadmissible. It appears that the converse of this proposition is equally sound, that when comparison is received as competent evidence, as it depends upon peculiar knowledge and skill, it is within the established principle in regard to matters of science, art and skill, to take as facts the opinions of those who may be presumed to have such art and skill, arising from the peculiar means afforded to such persons by their situation, employment, and habits of observation. Such evidence was admitted in *Goodtitle* v. *Braham*, 4 T. R. 497 ; and although the authority of that case was much shaken afterwards, it was not on the ground that evidence of the opin-

ion of skilled persons was not proper when the nature of the inquiry admitted of it, but because in the case of handwriting, there was no proper foundation laid for the admission of such evidence of opinion.

Moody
v.
Rowell.

3. Upon the question, whether it is competent to inquire of one having skill and experience in such subjects, whether in his opinion a signature is a genuine or imitated hand, there seems, as upon the other questions, to have been much difference of opinion. It is agreed on all hands, that such evidence is in general deserving of little consideration ; but the question is, whether it is proper to be laid before the jury at all. In the case of *Goodtitle* v. *Braham*, already cited, this evidence was held admissible. In *Rex* v. *Cator*, 4 Esp. R. 117, where the very strong effort was made to resist the evidence of comparison of handwriting and to overthrow the authority of *Goodtitle* v. *Braham*, upon that point, it was considered, both by the counsel and court, that it was within the ordinary principle of evidence of opinion in matters of science and skill, to admit witnesses of skill to testify upon inspection, that a signature was constrained and imitated, and not a free and genuine signature. Baron *Hotham* says, — the witness being asked, "From your knowledge of handwriting in general, do you believe that writing to be a natural or fictitious hand ? " — " His science, his knowledge, his habit, all entitle him to say, I am confident it is a feigned hand. To that there is no objection." The rule seems to have been considered thus settled by compilers ; 2 Stark. on Evid. 657 ; 1 Phillipps on Ev. (6th ed.) 474. Its authority, however, was called in question, but not overruled, in *Gurney* v. *Langlands*, 5 Barn. & Ald. 330. It was a case out of chancery. On the trial the testimony of a skilled person, to show from inspection, that the signature was imitated and not genuine, was rejected, the learned judge stating that he had never known such evidence admitted or offered. Doubts were expressed by some of the judges, whether the evidence offered was legal evidence ; but the cause was decided on the ground, that it being a cause out of chancery to try a question of fact for the satisfaction of the court, and the evidence being of satisfactory character without it, whether it was

42 *

legal evidence or not, it was immaterial, and its rejection was no good reason for setting aside the verdict.

On the whole, the Court are of opinion, that this species of evidence, though generally very slight, and often wholly immaterial, is competent evidence, and was properly admitted in the present case.

One other exception was taken on the part of the plaintiff, that he was precluded from putting a leading question on cross-examination, on the ground, that as a general rule of law, this is not admissible.

Probably this had little influence on the result, and would be of little importance in itself, did it not involve a question as to general practice ; but it is of the highest importance that the general practice, in the application of rules of evidence, should be uniform and settled.

The Court have no doubt, that it is within the discretion of a judge at the trial, under particular circumstances, to permit a leading question to be put to one's own witness, as when he is manifestly reluctant and hostile to the interests of the party calling him, or where he has exhausted his memory without stating the particular required, where it is a proper name, or other fact, which cannot be significantly pointed to by a general interrogatory, or where the witness is a child of tender years, whose attention can be called to the matter required, only by a pointed or leading question. So a judge may, in his discretion, prohibit certain leading questions from being put to an adversary's witness, where the witness shows a strong interest or bias in favor of the cross-examining party, and needs only an intimation, to say whatever is most favorable to that party. The witness may have purposely concealed such *bias*, in favor of one party, to induce the other to call him and make him his witness ; or the party calling him may be compelled to do so, to prove some single fact necessary to his case. This discretionary power to vary the general rule, is to be exercised only so far as the purposes of justice plainly require it, and is to be regulated by the circumstances of each case.

But upon the question, whether, as a general rule, the cross-examining party is prohibited from putting a leading question, to a matter not inquired of by the party calling him, on his exam-

ination in chief, there is a diversity of opinion. It was held by Mr. Justice *Washington*, that such question could not be put. *Harrison* v. *Rowan*, 3 Wash. C. C. R. 580. This is a very respectable authority and entitled to great consideration. But 'n the case cited, the nature of the question, and the circumstances under which it was put, are not stated, no argument was had, and no authority cited. The same view seems to have been taken by the Supreme Court of Pennsylvania. *Ellmaker* v. *Buckley*, 16 Serg. & Rawle, 77. But we think the general practice has been otherwise both in England and in this State, and is so laid down by the compilers. 1 Starkie on Ev. (4th Am. edit.) 131 ; 1 Phillipps on Ev. (6th edit.) 260.

There is one authority directly in point, where the objection was taken, and it was decided by Lord *Kenyon*, at nisi prius, that such leading question is admissible. *Dickinson* v. *Shee*, 4 Esp. Cas. 67. So in several recent cases, it has been held that where a witness is called to a particular fact, he is a witness to all purposes, and may be fully cross-examined to the whole case, and no distinction is suggested as to the mode of cross-examination. *Morgan* v. *Brydges*, 2 Stark. R. 314 ; *Rex* v. *Brooke*, ibid. 472.

On the whole, the Court are of opinion, that the weight of authority is in favor of the right to put leading questions, under the circumstances stated, and that this is confirmed by practice and experience. It is most desirable that rules of general practice, of so much importance and of such frequent recurrence, should be as few, simple and practical as possible, and that distinctions should not be multiplied without good cause. It would be often difficult, in a long and complicated examination, to decide whether a question applies wholly to new matter, or to matter already examined to in chief. The general rule admitted on all hands is, that on a cross-examination, leading questions may be put, and the Court are of opinion, that it would not be useful to engraft upon it a distinction not in general necessary to attain the purposes of justice, in the investigation of the truth of facts, that it would be often difficult of application, and that all the practical good expected from it may be as effectualiy

attained by the exercise of the discretionary power of the court, where the circumstances are such as to require its interposition. As this was laid down as the general rule of law, the Court are of opinion, that upon this ground the plaintiff, if he shall be so advised, is entitled to have a new trial.