# Commonwealth *v.* Ramsey, Appellant.

*Courts—Constitutional courts—Quarter sessions—Terms—Constitutional law.*

1. The constitutional designation of the court bearing the name of quarter sessions as one of the courts in which the judicial power of the commonwealth shall be vested, creates no implication of a restriction of the power of the legislature to establish more than four terms or sessions each year, or to delegate to the court itself the power to fix the number of its terms beyond four, and to establish the times for holding the same.

*Criminal law—Presentation by district attorney—Indictment—Discretion of court—Appeals.*

2. The discretionary power of the district attorney to prepare a bill of indictment without a previous binding over or commitment of the accused, is to be exercised, in the ordinary case, under the proper supervision of the proper court of criminal jurisdiction, and in all cases of its exercise is subject to its revision and approval. In such a proceeding the action of the officer and the court can be brought to the appellate court for purposes of review only when the abuse of discretion has been both manifest and flagrant.

3. The fact that the reasons which influenced the district attorney to resort to such mode of prosecution are not set forth in the record, is not a fatal objection upon appeal. No presumption that the district attorney did not have valid reasons for his action, arises from the refusal to set them forth upon the record, or to state them for the information of the defendants.

4. The fact that there is a pending indictment against the prisoner, will not prevent the district attorney from making a special presentation.

*Criminal law—Trial—Juries.*

5. Where there are four juries impaneled in other cases, but there are still forty-two remaining, the court may in its discretion proceed with the trial of another case, and the defendant in such case has no ground whatever for complaining of the action of the court, if it appears that the selection was made from the remaining jurors without exhausting his peremptory challenges.

*Evidence—Witness—Leading question.*

6. When and under what circumstances a leading question may be put is a matter resting largely in the sound discretion of the trial judge. If a witness is a reluctant witness, leading questions may be put to him.

Argued Oct. 26, 1909. Appeal, No. 26, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., Feb. T., 1909, No. 139, on verdict of guilty in case of Commonwealth v. William W. Ramsey. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed. ·

Indictment for bribery. Before FRAZIER, P. J.

At the trial the following requests were made:

If the court please, the defendant objects to being called for trial upon this indictment, being indictment of the Commonwealth against William W. Ramsey at No. 139, February Term, 1909, for the reason that it is a district attorney's bill of indictment found without any previous information, hearing, commitment or binding over and manifestly and obviously not justified nor required by any necessity of any kind whatever.

Objection overruled. To which ruling of the court counsel for defendant requests an exception. Exception allowed and bill sealed. [1]

There being two juries out and two in the box, and this being a case of great importance, the defendant requests the privilege of selecting his jury from a full panel.

Mr. Blakeley: The charge being one of misdemeanor and a case of no greater importance than misdemeanors are generally, of this character and kind, the district attorney feels he must oppose the application.

Application refused. To which ruling of the court counsel for defendant requests an exception. Exception allowed and bill sealed. [2]

Counsel for defendant moves to quash the indictment in this case for the following reasons:

1. The bill of indictment in this case is a district attorney's bill of indictment not supported by nor found in pursuance of any previous information, hearing and binding over.

2. Said district attorney's bill was presented to and found by the grand jury without any reason, necessity or excuse therefor without being justified by some pressing or adequate necessity, and especially without any of the emergencies,

exigencies or reasons therefor necessary to sustain its legality.

3. The said district attorney's bill is oppressive and unjust and none of the reasons or conditions justifying such an extraordinary and exceptional exercise of official authority existed.

4. Because upon the —— day of December, 1908, an information was regularly made and sworn to by one Tensard De Wolfe, praying for a warrant against this defendant for the same offense or crime charged in the said district attorney's bill of indictment, upon which information a warrant was issued, and this defendant was arrested and gave bail for a hearing before F. J. Brady, a police magistrate of the city of Pittsburg.  Subsequently, to wit, on December 24, 1908, this defendant, appearing before said Brady, was given a hearing upon the charges mentioned and contained in said information, and he, the said Brady, bound the said defendant over to answer said charges before this court.

5. On January 4, 1909, the district attorney of this county presented his bill of indictment based upon said information so made as aforesaid, and with the said Tensard De Wolfe as prosecutor, before the grand jury then inquiring for the county of Allegheny, and said grand jury returned a true bill of indictment on January 4, 1909, against this defendant for the same offense or crime mentioned and charged in the district attorney's bill, which said indictment was found regularly and properly upon January 4, 1909, and which charges the same offense as does the district attorney's bill at this number and term, and has remained in the office of the said district attorney from thence hitherto, and upon which said bill of indictment found upon January 4, 1909, the defendant has been ready for trial and could have been called for trial by the district attorney at any time since said date, and which said bill of indictment so found upon January 4, 1909, so remains and is among the indictments in the said district attorney's office untried and in full force and virtue, as by an inspection of the records of this court will more fully and at large appear. Therefore, said defendant says that the district attorney's bill of indictment in this case is illegal, null and void.

6. The finding of said district attorney's bill of indictment is apparently to the prejudice of said defendant among other things is this: That it deprives the said defendant of a prosecutor to whom he can look for damages and recompense in case this prosecution is malicious and without probable cause.

Motion overruled. Exception. [3]

Counsel for defendant now requests the court to instruct the district attorney to state upon the record the reason why this extraordinary power was exercised by him in this case.

The Court: The court declines to comply with that request. [4]

Mr. Burleigh: Counsel for defendant now requests the district attorney to state any reason which justifies the exercise by him in this case of this extraordinary power.

Mr. Blakeley: The district attorney refuses at this time to give any answer to counsel for defendant as they are not entitled to same under the law. [5]

Mr. Burleigh: Counsel for defendant now requests the district attorney to try the defendant upon the indictment found by the grand jury of this county upon January 4, 1909, at No. ——, January Sessions, 1909, which indictment was based upon a previous information duly and regularly made under oath and a hearing and a binding over to answer the said indictment being for the same offense or crime alleged or set forth in the district attorney's bill now under discussion.

Mr. Blakeley: The defendant is called to answer the present bill at No. 139, February Sessions, and a plea is asked for from him upon that bill at this time. [6]

A. A. Vilsack was asked this question:

"Q. Didn't you tell Mr. Ramsey that Klein wanted $15,000 for the passage of this ordinance through councils, and if it did not pass through councils he would get the $15,000 back?"

Mr. Burleigh: Objected to as grossly leading.

The Court: Under the circumstances, we will permit the question.

Objection overruled. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed. [7]

"Q. Why didn't you say a minute ago that he was there at that conversation?"

Mr. Burleigh: Wait one minute. I suppose this is all taken under my objection as to the question of its being leading.

Mr. Blakeley: It is intended to be leading, if your honor please. I think at this time I have the right to ask leading questions of this witness.

Mr. Ferguson: That might be if this man was conceived to be on trial here himself, but he is called for the commonwealth and he has not shown any reluctance. Of course we have no concern with the ruling of your honor as to the question of the witness testifying, but it is apparent that he is willing to testify, and I don't think that the district attorney should be permitted to put in the shape of leading questions what may be his conclusion from something that he knows from the witness or otherwise, and do it under the guise of cross-examining the witness. If there is anything that has been overlooked in the ordinary way, we will not object if the attention of the witness is called to it; but to make it entirely a cross-examination, we object.

The Court: We will not permit the district attorney to make it entirely a cross-examination, but we will allow him some latitude.

Objection overruled. Exception. [8]

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1–8) various rulings as above, quoting the bill of exceptions.

*Clarence Burleigh,* with him *J. S. Ferguson* and *Gibson D. Packer,* for appellant.—The law governing district attorney's bills is clear and precise, well known and plainly defended: In re Lloyd & Carpenter, 3 Clark, 188; Rowand v. Com., 82 Pa. 405; Com. v. Brown, 23 Pa. Superior Ct. 470; Com. v. Sheppard, 20 Pa. Superior Ct. 417; Com. v. Beldham, 15 Pa. Superior Ct. 33.

The court of quarter sessions of the peace is a court that

must be held in every county once in every quarter of a year: 4 Blackstone, 271.

*Warren I. Seymour,* with him *W. A. Blakeley,* for appellee.— The order of court need not set forth the reasons which justify the submission of the district attorney's bill to the grand jury; a defendant has not the right to require either the district attorney or the court to specify them on the record: Com. v. Brown, 23 Pa. Superior Ct. 470; Com. v. Sharpless, 31 Pa. Superior Ct. 96.

The court of quarter sessions has ample authority under the law to fix the number of its terms: Com. v. Andrews, 24 Pa. Superior Ct. 571; Com. v. Zephon, 8 W. & S. 382.

A defendant in a criminal case cannot insist upon a full panel of jurors: Com. v. Weber, 167 Pa. 153.

The court below had ample authority to permit the district attorney to ask a reluctant, hostile witness leading questions.

OPINION BY RICE, P. J., March 3, 1910:

The indictment in this case was submitted to and acted upon by the grand jury pursuant to the following order: "And now, to wit, February 3rd, A. D. 1909, the foregoing Bill of Indictment, presented to Court by William A. Blakeley, Esq., district attorney for Allegheny County, who moves for leave to present and submit the same upon his official responsibility to the Grand Jury for consideration; whereupon, it appearing to the Court that the reasons assigned by the district attorney are good and sufficient and the Court being of opinion that this is a proper case for a district attorney's bill, leave to do so is hereby granted. Per Curiam." It was returned a true bill. When the defendant was called for trial he formally objected to being tried on this indictment, "for the reason that it is a district attorney's bill of indictment found without any previous information, hearing, commitment or binding over and manifestly and obviously not justified nor required by any necessity of any kind whatever." The overruling of this objection is the subject of the exception set forth in the first assignment of error. He then moved to quash the indictment,

and assigned as ground therefor that the proceeding was oppressive and unjust, and none of the reasons or conditions justifying such an extraordinary and exceptional exercise of official authority existed, and particularly, that there was no justification or necessity for a district attorney's bill, because there were at that time pending against the defendant in the same court two indictments charging the same offense as that charged in this indictment, which were based on a binding over after information, warrant and hearing before a police magistrate of the city of Pittsburg. The overruling of this motion is the subject of the exception set forth in the third assignment of error. In the fourth and fifth assignments the refusal of the defendant's subsequent requests, first to the court to instruct the district attorney to state upon the record the reasons why this extraordinary power was exercised, second, to the district attorney to state any reason which justified it, are complained of. Neither of these two latter assignments appears to be supported by an exception, but as we view the case the result would be the same if they were.

The general doctrine enunciated by Judge KING in Lloyd and Carpenter's Case, 3 Clark's Cases, 188, relative to the discretionary power of the district attorney to prefer a bill of indictment without a previous binding over or commitment of the accused, to the principles which ought to guide that officer in the exercise of this extraordinary power, and to the safeguards against an abuse of it, has been accepted and reiterated in the decisions of the Supreme Court and of this court, and must be regarded as the settled policy of the law in this commonwealth: Rowand v. Com., 82 Pa. 405; Com. v. Green, 126 Pa. 531; Com. v. Brown, 23 Pa. Superior Ct. 470. We have no disposition, even if we had the power, to enlarge the number of exceptional cases in which the commonwealth will be justified in departing from the usual mode of proceeding by complaint and hearing before a committing magistrate. But, as was said by Mr. Justice WOODWARD, it is apparent, that upon considerations involving the maintenance of the public security, it is necessary that this extraordinary and delicate authority be lodged somewhere, and it is apparent also that it

has been lodged in the prosecuting officer of the common-wealth; it is to be exercised, in the ordinary case, under the supervision of the proper court of criminal jurisdiction, and in all cases of its exercise is subject to its revision and approval; further, the action of the officer and the court can be brought to the appellate court for purposes of review only when the abuse of their discretion has been both "manifest and fla-grant:" Rowand v. Com., 82 Pa. 405.   So in Com. v. Green, the Supreme Court, while approving the action of the quarter sessions in quashing the bill, took pains to declare, that if the court in the exercise of its discretion had sustained the in-dictment, and brought the defendant to trial and conviction upon it, it was quite improbable that the Supreme Court would have disturbed the judgment; "it is only for a flagrant abuse of this discretion, as we have said, this court would interfere." A careful study of these well-considered cases leaves no room for doubt that, in stating the rule governing the review of such action, the words "manifest and flagrant" were used ad-visedly, and that the refusal of the appellate court to reverse and set aside the action of the district attorney, which has been approved by the quarter sessions, imports only a deter-mination that no flagrant abuse of discretion is manifest, not necessarily that the appellate court would take the same ac-tion if the matter were committed to its discretion.   We have therefore acted upon this principle in all of the cases that have come before us, amongst which may be cited: Com. v. Mont-ross, 8 Pa. Superior Ct. 237; Com. v. Beldham, 15 Pa. Superior Ct. 33; Com. v. Sheppard, 20 Pa. Superior Ct. 417; Com. v. Brown, 23 Pa. Superior Ct. 470.   The reasons which in-fluenced the district attorney to resort to this mode of proce-dure are not set forth in the record, nor is it a fatal objection upon appeal that the court did not require this to be done. This point was decided in the case last cited, after thorough and exhaustive argument by counsel and deliberate considera-tion by us, and we see no reason for changing or modifying the conclusion there reached.   It necessarily follows that, upon ap-peal, no presumption that the district attorney did not have valid reasons for proceeding in this mode arises from his re-

fusal to set them forth upon the record, or to state them for the information of the defendants.

The foregoing observations are taken almost literally from the opinion of this court in Com. v. Sharpless, 31 Pa. Superior Ct. 96, and are particularly pertinent here because of the close similarity of the cases. This will be seen by a comparison of the assignments of error set forth in the report of that case with those in the present case to which we have alluded above. In that case the defendants were arrested and had a hearing before a justice of the peace upon certain charges, but the magistrate's return of the proceedings was defective in that it failed to set forth that the offenses were committed in Delaware county, and for that reason it (the return, not an indictment based on the return) was quashed by the court upon the defendants' motion. Upon the same day, by special leave of court, and against objections of the defendants very similar to those urged in the court below in the present case, the district attorney submitted bills to the grand jury charging the defendants with the same offenses that had been charged against them in the hearing before the justice of the peace. The assignments of error complaining of the overruling of the defendants' objections, refusing their motion to require the district attorney to state his reasons for sending special bills to the grand jury, and refusing their motion to quash, were overruled on appeal after full consideration of the question, upon the ground that the record did not affirmatively show "an abuse of discretion both flagrant and manifest."

It is argued by appellant's counsel that the case at bar differs from the foregoing and all the other cases in this, that there were pending indictments for the same offense based on a binding over after hearing before a magistrate. How, then, was the defendant prejudiced? Does not this fact show that he had all the benefits and advantages which accrue to an accused from the initiation of a prosecution against him in the ordinary way? These are pertinent questions, but we need not put our decision upon an answer to them. It may be rested securely upon the broader ground that notwithstanding all the facts alleged in the motion there may have been valid

reasons known to the court and the district attorney for the exercise of this power. It is declared affirmatively and unequivocally in the order heretofore quoted that the district attorney acted "upon his official responsibility;" therefore it is well to recall what Judge King says as to the safeguard which the official responsibility of the district attorney furnishes against oppression and abuse of power: "Besides the intelligence, integrity and independence, which always must be presumed to accompany high public trust, the accused, unjustly aggrieved by such procedure, has the official responsibility of the officer to look to. If an attorney general" (now district attorney) "should employ oppressively, this high power, given to him only to be used when positive emergencies or the special nature of the case requires its exercise, he might be impeached and removed from office for such an abuse. The court, too, whose process and power is so misapplied, should certainly vindicate itself by protecting the citizen. In practice, however, the law officer of the commonwealth always exercises this power cautiously; generally under the directions of the courts, and never unless convinced that the general public good demands it." The order further declares that it appeared to the court that the reasons assigned by the district attorney were good and sufficient 'and that the court was of opinion that this was a proper case for a district attorney's bill. Presumably the court and the district attorney were cognizant of and were guided by those well-settled and well-understood principles which ought to guide the district attorney in the exercise of this discretionary power, and to govern the court in giving or withholding its approval. The facts alleged in the motion to quash do not necessarily rebut this presumption. They may all be true and still there have been proper occasion for the procedure objected to. It is not for us to speculate as to what the reasons were that moved the court and the district attorney; for as already stated, "the refusal of the appellate court to reverse and set aside the action of the district attorney, which has been approved by the court of quarter sessions, imports only a determination that no flagrant abuse of discretion is manifest, not necessarily that

the appellate court would take the same action if the matter were committed to its discretion."

Having concluded that the indictment was valid, it follows that there was no error in trying the defendant on that indictment instead of the earlier ones. In Smith v. Com., 104 Pa. 339, the court said: "It is well settled, on both reason and authority, that the pendency of an indictment is not good ground for a plea in abatement to another indictment in the same court for the same cause. Whenever either of them,—and it matters not which,—is tried and judgment pronounced thereon, such judgment will afford a good plea in bar to the other, either of autrefois convict, or autrefois acquit; but nothing short of a conviction or acquittal will support such a plea: Com. v. Drew, 57 Mass. 279; Regina v. Goddard, 2 Ld. Raymond, 920; Whart., Crim. Pleading and Practice, sec. 431; 2 Hawkins' P. C. 309; Foster's C. L. 105; 1 Chitty's C. P. 446." The same principle would support a trial on the latter indictment first, and it was so held in Com. v. Kaufman, 9 Pa. Superior Ct. 310.

Nor was there technical legal error or abuse of discretion in the ruling complained of in the second assignment. While there were two juries out, and two in the box in other cases, there remained forty-two jurors from whom to make the selection in the present case. It is stated by the commonwealth's counsel, and this is not contradicted, that the selection was made from that number without exhausting the defendant's peremptory challenges. But be that as it may, and having regard solely to the condition of the panel when the ruling complained of was made, it was within the discretion of the court to proceed with this case without awaiting the return of the juries impaneled in the other four cases: Com. v. Weber, 167 Pa. 153.

Upon the questions raised by the seventh and eighth assignments of error this extract from the opinion of the learned trial judge may be appropriately quoted: "The objection to our permitting the district attorney to ask leading questions, and in a manner cross-examine A. A. Vilsack, a witness called by the commonwealth, was earnestly pressed at the argument of these motions. We have not been convinced that our rul-

ing in this respect was erroneous. Vilsack was an officer in the same bank with defendant, was charged with the same offense defendant was being tried for, and naturally was to some extent a reluctant witness. Under these circumstances we were justified in permitting the district attorney to at times ask leading questions. In our opinion the manner of the examination of the witness was entirely within proper bounds." It is urged that the fact that he had been in consultation with the district attorney the evening before and had narrated to him facts within his knowledge shows that he was not an unwilling witness. But as was well said by the counsel for the commonwealth this fact does not demonstrate that he told the district attorney all that he knew or that he was willing to tell in court all that he had told the district attorney. Says Mr. BEST: "It should never be forgotten that 'leading' is a relative not an absolute term. There is no such thing as 'leading' in the abstract, for the identical form of question which would be leading of the grossest kind in one case or state of facts might not only be unobjectionable, but the very fittest mode of interrogation in another:" 1 Best on Evid., sec. 641. The form of a question, whether it shall be put as leading or otherwise, depends not altogether on an inflexible rule, but upon a variety of circumstances: Moody v. Rowell, 34 Mass. 490; Farmers' Mutual Fire Insurance Co. v. Bair, 87 Pa. 124. For example, the fact that the party is surprised by his own witness and discovers after he has placed him on the stand that he is hostile may be considered by the trial judge in the exercise of a sound discretion. So also, as pointed out in the case last cited, "the mere manner of the witness when on the stand may be such as to justify the court in permitting leading questions." Of that the trial court is better able to judge than an appellate court. But even we can see some evidence of reluctance in the printed transcript of the witness's testimony. He naturally would be reluctant as the learned judge says. Upon a full consideration of all the matters that may properly be considered in reviewing these assignments, we conclude that the court committed no error in allowing the district attorney a wider latitude in the examination of this

witness than is ordinarily allowable in the examination of a willing and favorable witness. As is shown in the cases cited as well as by other authorities, when and under what circumstances a leading question may be put is a matter resting largely in the sound discretion of the trial judge: 1 Greenl. Evid. (15th ed.), sec. 435; Sharswood's Notes to Starkie on Evid. at p. 150; 3 Jones, Evid. 819. "The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits beforehand, but to be exercised in the interests of justice and a fair trial under circumstances as they arise:" per MITCHELL, J., in Gantt v. Cox, 199 Pa. 208. There was in this case no misuse of that discretion resulting in injury to the appellant.

The remaining contention to be considered is that the whole proceedings were coram non judice because the indictment was found and the trial and conviction were had at the February sessions, 1909, one of the regular sessions or terms of the court of quarter sessions of the peace of Allegheny county established by an order of the judges made in 1907. And this contention is based on the proposition that this is a constitutional court and is required by the constitution to have quarterly terms or sessions and is forbidden to have more. The argument in support of this proposition is based largely upon the name of the court. The court took its name originally from its sitting quarterly or once every three months. Blackstone speaks of it as "a court that must be held in every county once in every quarter of the year:" 4 Bl. Com. 471. This was its practice in this commonwealth prior to the constitution of 1874, although it was not universally so; for example, it was declared by the second section of the Act of February 3, 1843, P. L. 8, that the court of quarter sessions of the peace for the city and county of Philadelphia should hold six terms or sessions in the course of each year. The constitutional designation of the court bearing that ancient name as one of the

courts in which the judicial power of the commonwealth shall be vested created no implication of a restriction of the power of the legislature to establish more than four terms or sessions each year, or, as was done by the Act of March 18, 1875, P. L. 28, to delegate to the court itself the power to fix the number of its terms beyond four and to establish the times for holding the same. See also Act of August 7, 1883, P. L. (1885) 323. If there were any basis for argument that by use of the word "terms" the legislature did not intend the act to apply to the quarter sessions, it is removed by the second section. This is all that we deem it necessary to say relative to the contention of appellant's counsel upon this matter. It cannot be sustained.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Allegheny county with direction that the judgment be fully carried into effect and to that end it is ordered that the defendant forthwith appear in that court and that he be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.