## Commonwealth v. Snyder

*John A. R. Welsh*, district attorney, for Commonwealth.

*Paul S. Lehman*, for defendant.

RICE, P. J., March 12, 1946.—At the January sessions, 1946, defendant was indicted and tried on four bills, charging him with rape in two counts and incest in three counts against and with his daughter Margaret. The four indictments were tried jointly before one and the same jury, by consent of the district attorney and the counsel for defendant and by direction of the court. At the close of the case of the Commonwealth, on motion of the counsel for defendant, the court agreed to instruct the jury to find defendant not guilty on the two counts for rape, but the case proceeded on the three counts charging incest and, after the addresses of the counsel and the charge to the jury,

defendant was found guilty of incest on all three counts.

Defendant has now made a motion for a new trial, giving nine reasons in support of the motion, which reasons may be classified or grouped as follows: (1) the verdicts were against the law, the evidence, the weight of the evidence and the charge to the jury; (2) the court should have affirmed defendant's points for the binding instructions in his favor; and (3) the court should have granted defendant's motion to quash the indictments filed to nos. 1 and 3, January sessions, 1946. We will consider the first and second groups of reasons together, since they require an evaluation of the testimony, its credibility, weight and sufficiency. No complaint has been made as to the correctness or adequacy of the charge to the jury, but there is a question whether the verdicts are consistent with the court's instructions.

The direction of the court to the jury to find verdicts of not guilty of rape eliminated from the case the questions whether defendant used force to accomplish his purpose to have intercourse with his daughter, whether she resisted him or made any outcry of complaint, and whether the intercourse was had with or without her consent. Of course, it was left to the jury to find whether or not defendant had carnal knowledge of his daughter. There was no controversy whether or not Margaret Snyder was the daughter of defendant, and that reduced the questions for the jury to decide whether or not defendant did, on the dates specified in the bills of indictment, have carnal knowledge of his daughter, Margaret. This rendered it unnecessary for the court or jury to consider the testimony of certain witnesses for the Commonwealth called to prove that Margaret, soon after the last act of alleged rape, made complaints to other persons. Therefore, eliminating all charge of rape, indictments nos. 1, 2 and 3, January sessions, 1946, charge the defend-

ant with committing incest with his daughter, Margaret, on August 14, 1945, October 8, 1945, and January 28, 1944, respectively.

Margaret Snyder testified that defendant, her father, had, in the home of defendant in Port Royal, Juniata County, where she and other children of defendant lived with him, sexual intercourse with her on the said three dates and at other times, about 300 in all, between the first and last of the said three dates, and that on occasions he had intercourse with her as many as four times in a day. She testified in particular to the circumstances of these sexual acts. She testified that her mother, the wife of defendant, died on January 14, 1944, and that two weeks later her father came to her bedroom, where she was in bed ill, took off his pants and had intercourse with her. She testified that he would come into her bedroom, where two younger sisters, Mary, aged 12 years, and Virginia, aged nine years, slept in another bed, and take her out of her room into his own bedroom, where he would have intercourse with her, and that this happened on August 14, 1945, V-J Day. She testified also that, on October 8, 1945, he came into a lower room, where she was ironing clothes, after locking the two outside doors of the house, and took her upstairs to his room and had intercourse with her. By way of corroboration, Mary and Virginia, the two younger sisters, testified that on V-J Day their father came into the bedroom of the three sisters after they were all in bed and took Margaret out of the room. Also, Dr. P. H. Shelley, of Port Royal, testified that, on October 10, 1945, he made an examination of Margaret Snyder and found that she had a ruptured hymen.

Defendant was a witness in his own behalf and denied that he ever had intercourse with his daughter Margaret. He said that Margaret was subject to epileptic fits, that, after his wife died, when Margaret had or was about to have a fit, he would by means of

a syringe, inject a certain medicine he had procured into her rectum, and that he might, on occasions, have gone into her bedroom at night when she was in bed and taken her out, but that, if he did so, it was for the purpose of giving her the medicine.

The court instructed the jury that as to the charge of incest Margaret Snyder was an accomplice of defendant and that it was the duty of the jury to scrutinize, analyze and weigh very carefully her testimony and that they should not convict defendant unless they were convinced, beyond a reasonable doubt, that she had told the truth. We will not quote from the charge but make reference to it as transcribed. No complaint has been made by counsel for defendant as to the correctness or adequacy of the charge on the subject of the testimony of an accomplice. The jury were also instructed as to the importance of corroboration of the testimony of an accomplice.

In his address to the jury and his argument to the court later on the motion, counsel for defendant argued strongly against the credibility of Margaret Snyder on account of her testimony as to the number of times her father had intercourse with her from January 28, 1944, to October 8, 1945, and as to the number of times he had intercourse with her on some days. He also contended that it was altogether likely that, if defendant had intercourse with his daughter as often as she said, she, being a young woman from 17 to 19 years old, would have become pregnant. We think these were matters exclusively for the jury to decide. They were men and women of general knowledge and experience in the affairs of life, and we venture the assertion that nearly all of them were or had been married. There was no medical testimony in support of the contentions of counsel. It is common knowledge that not all men have the same sexual power and that some are capable of very frequent sexual acts. Also, it is common knowledge that not all women of child-bearing ages are able

to bear children. What right would a judge have to pretend that he knew more about such matters than 12 men and women sitting as a jury? One of the purposes of trial by jury is to have the benefit of the common sense, general knowledge and experience of 12 "sober, intelligent and judicious" persons to decide questions of fact, and we are of the opinion that all questions of credibility of Margaret Snyder were properly left to the jury. Both defendant and Margaret could not have told the truth as to the sexual acts; one of them falsified. The jury were not obliged to believe defendant and disbelieve the daughter, but they had the right also to pass upon the credibility of defendant. If his explanation of his presence in the bedroom of the three daughters, Margaret, Mary and Virginia, at night was deemed by the jury to be incredible they had a right to consider that as a factor in favor of the credibility of Margaret. And there are arguments against his credibility. If on such occasions Margaret had had fits, would she be able to walk out of the room, and why would he not give her the medicine when she was in bed? According to his testimony, the medicine had the effect of lessening a spasm and putting her into a stupor, not of preventing an attack. If she was able to walk out of the room, either she did not yet have a fit or else had recovered from it; if the former, how would he know an attack was coming, if the latter, would she need the medicine? The jury may have asked themselves questions like these. At any rate, we reiterate that it was the power and the duty of the jury to pass upon the credibility of all the witnesses, including defendant. Having been fully instructed regarding the testimony of an accomplice, the jury had the power to convict defendant, with or without testimony corroborating Margaret Snyder, and under the circumstances they may have found corroboration in the testimony of Mary and Virginia Snyder and Doctor Shelley. We consider the testimony suffi-

cient in quantity and quality to submit to the jury and believe the verdicts in accord with the testimony and the charge to the jury. Therefore, we dismiss the first seven reasons in support of the motion.

The third group of reasons in support of the motion state that the court should have granted the motions to quash indictments nos. 1 and 3, January sessions, 1946. It has been ruled by some lower courts that the refusal of a motion to quash an indictment is not a good reason for granting a new trial: Commonwealth v. Irwin, 1 Clark 344, 2 Pa. L. J. 329; Commonwealth v. Still, 9 York 73; Commonwealth v. Rockey, 34 Lanc. 101; Commonwealth v. Yuscavage, 19 Sch. L. R. 314; Commonwealth v. Popkave, 29 Dist. R. 787. If a new trial is granted in a criminal case, the same indictment remains in force, and another trial would be on it. Hence, this group of reasons is not valid.

But, since no written opinion on the motion to quash was filed, we will now consider the motion to quash on the two reasons assigned in order to determine whether there was a manifest and flagrant abuse of discretion in the refusal to quash. Unless there was such abuse of discretion, the refusal to quash is not reviewable in an appellate court: Rowand v. Commonwealth, 82 Pa. 405; Commonwealth v. Green, 126 Pa. 531; Commonwealth v. Sheppard, 20 Pa. Superior Ct. 417; Commonwealth v. Brown, 23 Pa. Superior Ct. 470; Commonwealth v. Sharpless, 31 Pa. Superior Ct. 96; Commonwealth v. Ramsey, 42 Pa. Superior Ct. 25; Commonwealth v. Norris, 87 Pa. Superior Ct. 66. To sustain his claim that the indictment should have been quashed, defendant must show that in some way he was vitally prejudiced: Commonwealth v. Montross, 8 Pa. Superior Ct. 237.

The motions to quash the two indictments allege substantially the same reasons, and what we have to say about one will apply to the other.

The first reason given in the motion to quash indictment no. 1, January sessions, 1946, which charges incest on August 14, 1945, is that the other two indictments charge the same identical offense, if we understand it rightly, after condensing it and eliminating all references to the charge of rape. Even if it were true that all three indictments charge the same offense, it would not be good ground for quashing any one of them: Commonwealth v. Ramsey, 42 Pa. Superior Ct. 25. If there are two or more bills for the same identical offense and defendant is tried on one of them, the verdict can, on the trial of a second bill, be pleaded autrefois convict or autrefois acquit, as the case may be, and thus defendant cannot be put in jeopardy twice for the same offense, and the contention is a matter of defense, not a cause for quashing. But the allegation that the three bills charge the same identical offense is not correct, as a reading of the three bills will show. They charge incest on three separate and distinct dates within the two-year period of limitations. The information charges defendant with incest on October 8, 1945, and "divers times before stated date". The transcript of the magistrate shows that defendant was given a hearing and was committed to jail in default of bail. Thus, defendant had advance notice of the possibility and probability that he would be indicted for offenses earlier than October 8, 1945. An information may charge any number of offenses, distinct or cognate, felonies or misdemeanors, against same defendant: 1 Sadler's Criminal Procedure, sec. 206, pp. 246, 247. And any number of indictments may be based on the same information. But since incest is a felony, it was necessary that three bills be drawn if it was desired to prosecute defendant for three offenses. This reason cannot be sustained.

The second reason given in the motion is that there is no written report of the grand jury upon which the district attorney could be directed to send to the grand

jury an indictment charging incest on August 14, 1945. This is evidently assigned as a reason because in his motion the district attorney said: "This motion is being made pursuant to a report of the Grand Jury of the County of Juniata on January 21, 1946." On the motion the court entered an order giving the district attorney leave to send up the bill to the grand jury. We are of the opinion that the information, in charging defendant with acts of incest prior to October 8, 1945, as stated in the last preceding paragraph of this opinion, was sufficient to justify the district attorney in presenting bills for other dates than October 8, 1945, without asking leave of court, but ex cautela majora he presented his motion. In Commonwealth v. Green, 126 Pa. 531, are set forth the different methods of initiating a prosecution for a criminal offense, and among them are presentments by grand juries and district attorney bills. A grand jury makes a presentment from its own knowledge, and it must be made in writing, but a district attorney bill must be supported by the testimony of witnesses before the grand jury, who may not act from their own knowledge in such case. The bill which defendant sought to quash was not the result of a presentment but was purely a district attorney bill, based on the testimony of witnesses, whose names are endorsed on the bill. Hence, we believe that the statement in the motion of the district attorney quoted above was not necessary to support his motion. It has been held that it is not necessary for a district attorney in his motion or petition for leave to send up a bill, to state any reasons for his request: Commonwealth v. Sharpless, 31 Pa. Superior Ct. 96; Commonwealth v. Ramsey, 42 Pa. Superior Ct. 25; Commonwealth v. Rothensies, 64 Pa. Superior Ct. 395. Therefore, the second reason for quashing cannot be sustained.

We conclude, therefore, that, in allowing the district attorney to send up two bills, nos. 1 and 3, January

sessions, 1946, and refusing to quash the same, we did not commit any manifest and flagrant abuse of discretion. We have now considered all the reasons in support of the motions to quash and the reasons in support of the motion for a new trial and find no merit in any of them. We might terminate this opinion at this point, but for the sake of the record we desire to consider some other points, not assigned in any of the motions, but mentioned by counsel at the argument.

If any indictment for the offense of January 28, 1944, had not been sent up by the district attorney at the January sessions, 1946, defendant could not have been prosecuted for it, as the two-year limitation would have expired before the next sessions of the court on April 8, 1946, and that alone was sufficient reason for sending up a bill by leave of court: Commonwealth v. Strauss, 89 Pa. Superior Ct. 82.

There are many cases of the Pennsylvania appellate courts in which are discussed the practice of district attorneys in sending bills to grand juries by leave of court. We have examined at least 20 such cases but do not have the time, space or inclination to review them one by one. But we do cite the following cases in support of the action of the district attorney in sending up the two bills and the court in allowing that to be done: Commonwealth v. Chirico, 117 Pa. Superior Ct. 199; Commonwealth v. McKeehan, 93 Pa. Superior Ct. 348; Commonwealth v. Stoner, 265 Pa. 139; and Harrison v. Commonwealth, 123 Pa. 508. Each of these cases furnishes much stronger arguments on behalf of defendant than the facts of the pending case. The Chirico case is especially significant. There defendant had pleaded guilty to a lottery offense, and the trial judge heard testimony before passing sentence, which revealed other offenses by defendant, and the judge directed that bills be sent up for the other offenses, and a refusal to quash the additional bills was affirmed.

454

*Order*

And now, March 12, 1946, the motion of defendant for a new trial is refused, and it is directed that defendant be produced in court for sentence.