## Rowand *versus* The Commonwealth.

1. R. was held to bail upon two informations upon charges of assault and battery, and the indictments founded thereon were preferred before the grand jury at June sessions 1875, and ignored, and the county ordered to pay the costs. At the September sessions of the same year, the same informations were sent before another grand jury, and true bills found. At the trial, a motion was made to quash these indictments, which the court refused, and the accused was tried and convicted. *Held,* that the refusal to quash cannot be reviewed by this court, and that this action of the district attorney and court below could be brought before this court for review only where the abuse of their discretion should be found to have been both manifest and flagrant.

2. The district attorney of the county has the power under the authority given to deputy attorneys general, by the Act of the 3d of May 1850, to prefer an indictment before a grand jury, without a previous commitment of the accused, and also, as in this case, after a return of ignoramus to a previous indictment of the accused for the same offence, without a fresh hearing; but this power must be exercised under the supervision of the proper court of criminal jurisdiction, and its employment can only be justified by some pressing and adequate necessity.

3. When a defendant has been once discharged on a return of "ignoramus" a new bill sent up without a fresh hearing and without the leave of court should be promptly quashed in the absence of affirmative proof that the course taken was required to meet some grave emergency or provide for some urgent public need, and where, as in this instance, the Quarter Sessions must be assumed to have approved the action of the district attorney, and the defendant has been tried, convicted and sentenced on the bills found by the second grand jury, if there was wrong, it was one which the Quarter Sessions could alone redress, and this court is powerless to interfere.

October 11th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Quarter Sessions of *Allegheny county*, Nos. 53 and 54: To October and November Term 1876.

The proceeding in the court below was thus:—

At the June sessions of 1875 of the Court of Quarter Sessions, Allegheny county, A. H. Rowand, Jr., was held to bail upon two informations, upon charges of aggravated assault and battery, and assault and battery, and the grand jury ignored the bills founded upon these informations and ordered the county to pay the costs. At the September sessions of the same year these informations without the permission of the court were sent before another grand jury and true bills found.

The counsel for defendant moved the court to quash the indictments in these cases for the following reasons:—

| 82 | 405 |
|----|-----|
| 126 | 539 |
| 82 | 405 |
| f 20 SC | ¹420 |
| 82 | 405 |
| 21 SC | 233 |
| ϵ2 | 405 |
| 23 SC | ¹496 |
| 23 SC | ²497 |
| 82 | 405 |
| f 30 SC | ¹ 57 |
| 30 SC | ³385 |
| 82 | 405 |
| 31 SC | ² 98 |
| 31 SC | ² 99 |
| 82 | 405 |
| e39SC | 133 |

[Rowand *v.* Commonwealth.]

1. The informations and bills were before the grand jury of June sessions 1875, and the bills were ignored by that grand jury.

2. No new informations were made, and the ignoring of the bills by the grand jury, as set forth in the first reason, was a final and conclusive determination of said informations.

3. It is contrary to practice and at variance with the law to subject a defendant to the jurisdiction of two grand juries upon the same informations.

The court (White, J.) in an opinion said :—

" These indictments were found on informations which were before the grand jury at the June sessions, on which bills were returned ignoramus. These are new bills, but precisely like the former ones, and being based on the same informations, are substantially the same as returning the old ignored bills to be reconsidered by a new grand jury. They were not directed to be sent back by the court. I doubt not the power of the court, on cause shown upon affidavits, to direct a bill to be sent back to be reconsidered by the same or a subsequent grand jury. But in the absence of such direction by the court, I doubt the legality, and very much condemn the practice of sending up the same bill (or one just like it, based on the same information) to a subsequent grand jury, after it has been ignored by one grand jury. Ordinarily an ignoramus should be the end of the case. If I were acting on my own judgment I would quash these indictments, but as I have been informed that the course pursued in these cases has been always sustained by this court, I shall conform to that practice, and refuse these motions."

The defendant, who was tried and convicted, took this writ and the error assigned was this refusal by the court to quash the indictments.

*Bayne & Magee,* for plaintiff in error.

The District Attorney made no argument.

Mr. Justice Woodward delivered the opinion of the court, October 23d 1876.

Indictments in these two cases were preferred before the grand jury at the June Term of the Court of Quarter Sessions in 1875, and were returned " ignoramus," with a direction that the county should pay the costs. New indictments were sent to the next grand jury at the September sessions 1875, and a " true bill " was returned in each case. Before the June Term Rowand, the defendant, had been held to bail on informations made against him, and he was indicted in September for the offences charged in those informations. Expressing grave doubt of the legality of the proceeding, and emphatically condemning the practice which sustained it, the Court of Quarter Sessions overruled the motion to quash the indictments.

[Rowand v. Commonwealth.]

If the question were an open one, there would be little doubt as to the rule it would be the duty of this court to lay down.  On principle, the return of "ignoramus" made on an indictment by a grand jury ought to be the end of the prosecution originating in the information returned by the committing magistrate.  The defendant has complied with the conditions of his recognisance.  The prosecution has failed with the failure of the bill.  The sureties of the defendant are released, and he is entitled to be discharged.  In analogy to the rules by which other judicial proceedings are governed, this ought to be the end of the case founded on the complaint he was called on in the first instance to answer.  If the public interest should require that further action should be taken against him, it should be by a new warrant on a new information, except in those rare cases (which should be defined as accurately as possible) in which a district attorney is justified in preferring an indictment without a preliminary hearing.  Such a rule would not interfere with the power of the judges of the Quarter Sessions, on proper notice, to re-commit to the same or a succeeding grand jury a bill thrown out in consequence of oversight, mistake or fraud.  It would only prevent the injustice which the exercise of unlimited discretion by a district attorney is capable of producing.  Discharged from his recognisance by the action of the first grand jury, the defendant is thrown off his guard, and the second presentation of the indictment can be delayed till his witnesses are dead or distant, and his means of defence destroyed.

But principles have been long settled which require that the action of the district attorney in these cases shall be sustained.  The Act of the 3d of May 1850, providing for the election of this officer, makes it his duty to "sign all bills of indictment, and conduct in court all criminal or other prosecutions in the name of the Commonwealth, or when the state is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorneys general."  A defendant discharged from custody after the return of "ignoramus" to an indictment against him, remains still subject to prosecution in any of the forms to which the attorney general or his deputy before the Act of 1850 could resort.  "If a man be committed for a crime, and no bill be preferred against him, or it be thrown out by the grand jury, so that he is discharged by proclamation, he is still liable to be indicted.  * * * And so, too, a discharge from a former indictment upon payment of costs, in consequence of the refusal of the prosecutor to prosecute further, is no bar : Whart. Cr. Law, sect. 544, referring to 2 Hale 243 ; Commonwealth v. Miller, 2 Ash. 61, and State v. Blackwell, 9 Ala. 79.  The modes of proceeding in the initiation of criminal prosecutions were stated with great fulness and accuracy by Judge King in a charge to a grand jury of Philadelphia in 1845, quoted at length in a note to sect.

[Rowand *v.* Commonwealth.]

458 of Whart. Crim. Law. In the course of the charge, the judge said: "Another instance of extraordinary proceeding is where the attorney general, ex officio, prefers an indictment before a grand jury without a previous commitment of the accused. That this can be lawfully done is undoubted. And there are occasions where such an exercise of official authority would be just and necessary; such as where the accused has fled the justice of the state, and an indictment found may be required previous to demanding him from a neighboring state, or where a less prompt mode of proceeding might lead to the escape of a public offender. In these, however, and in all other cases where this extraordinary authority is exercised by the attorney general, the citizen affected by it is not without his guarantees. Besides the intelligence, integrity and independence which always must be presumed to accompany high public trust, the accused, unjustly aggrieved by such a procedure, has the official responsibility of the officer to look to. * * * In practice, the law officer of the Commonwealth always exercises this power cautiously —generally under the direction of the court—and never unless convinced that the general public good demands it." Doctor Wharton, speaking of the general result of the rules stated by Judge King, says: "This is the view which may be considered as now adopted in Pennsylvania." The same general result was reached by the reasoning of the present Chief Justice in McCullough *v.* The Commonwealth, 17 P. F. Smith 30. He said: "It has never been thought that the 9th sect. of the 9th art. of the constitution, commonly called the Bill of Rights, prohibits all modes of originating a criminal charge against offenders, except that by a prosecution before a committing magistrate. Had it been so thought, the court, the attorney general and the grand jury would have been stripped of powers universally conceded to them. In that event, the court could give no offence in charge to the grand jury, the attorney general could send up no bill, and the grand jury could make no presentment of their own knowledge, but all prosecutions would have to pass through the hands of inferior magistrates."

It is thus apparent that upon considerations involving the maintenance of the public security it has been found necessary to lodge this extraordinary and delicate authority somewhere, and it is apparent also that it has been lodged in the prosecuting officer of the Commonwealth. It is to be exercised, in the ordinary case, under the supervision of the proper court of criminal jurisdiction, and in all cases its exercise is subject to their revision and approval. The action of the officer and the court could be brought here for purposes of review only when the abuse of their discretion should be found to have been both manifest and flagrant. Cases can be conceived where the ends of justice would be defeated by the delay and publicity of a motion in open court for leave to send up an indictment, and in such cases it would be the duty of the prosecuting

[Rowand *v.* Commonwealth.]

officer to act promptly and upon his own responsibility. Whether the exclusion of the attorney general from the connection he formerly held with the criminal business of the Commonwealth, and the transfer of his powers to the district attorneys of the several counties, were well or ill advised, is a legislative and not a judicial question. Whatever individual theories may be entertained, and whatever the rule, if it were competent now to establish one, it might, in view of the tendencies of modern systems, be thought wise to adopt, all that can be said is that the questions presented by this record have been settled, and all that can be done is to accept the law as it has been inherited from the able men by whom the foundations of our jurisprudence were laid.

While, however, the possession of this exceptional power by prosecuting officers cannot be denied, its employment can only be justified by some pressing and adequate necessity. When exercised without such necessity it is the duty of the Quarter Sessions to set the officer's act aside. Where a defendant has been once discharged on a return of " ignoramus," a new bill sent up without a fresh hearing, and without the leave of the court, should be promptly quashed in the absence of affirmative proof that the course taken was required to meet some grave emergency, or to provide for some urgent public need. In the present instance, the Court of Quarter Sessions must be assumed to have approved the action of the district attorney. The defendant has been tried, convicted and sentenced on the bills sent to the second grand jury. If there was wrong it was one which the Quarter Sessions could alone redress. This court is powerless to interpose.

Judgment affirmed.