## Commonwealth *v.* Sharpless and West, Appellants.

*Criminal law—District attorney—Grand jury—Submission of bill to grand jury—Discretion.*

The action of the district attorney in submitting a bill to the grand jury with the permission of the court, but without a previous commitment, will not be reversed by the appellate court where there is no manifest and flagrant abuse of discretion; and it is immaterial that the district attorney has not stated his reasons for his action.

*Criminal law—Poor directors—Falsification of books.*

Directors of the poor may be convicted of falsifying their books, although they are acquitted at the same time of appropriating the moneys represented by the false entries.

Argued March 12, 1906. Appeals, Nos. 27 and 28, Oct. T., 1906, by defendants, from judgment of Q. S. Delaware Co., on verdicts of guilty in cases of Commonwealth v. Frank E. Sharpless and Commonwealth v. Newton P. West. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for embezzlement and for falsifying books. Before JOHNSON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were as follows :

1. The learned trial judge erred in overruling the defendants' objection to granting special leave to the district attorney to send district attorney's bills to the grand jury as follows :

September 21, 1905, transcript quashed. Eo die : District attorney moves the court for special leave to send district attorney's bills to the grand jury. Eo die : Defendants object. 1. Because there is no great public, pressing or adequate necessity or exigency justifying such action. 2. Because the defendants were first arrested and bound over by a justice of the peace whose return was quashed and the motion of the district attorney is made to overcome the effect of the quashing of the return. 3. Because the district attorney upon applica-

tion of defendants would not set out or state his reasons or the necessity for sending out such bills, and the court was moved to refuse the application unless the district attorney would state his reasons or the necessity. Eo die : Defendants' objections overruled, to which the defendants except. Eo die : Exception granted the defendants and bills sealed.

2. The learned trial judge erred in overruling the defendants' motion to require the district attorney to state his reasons sending special bills to the grand jury as follows :

Eo die : The court declined to require the district attorney on motion of defendants to state his reasons, or the necessity for his said application. Eo die : Defendants except. Eo die : Exception granted the defendants and bill sealed.

3. The learned trial judge erred in overruling the defendants' motion to quash the indictment as follows :

September 17, 1905. Morning session.

(Defendants each make a motion to quash indictment.).

(Motion overruled.)

An exception is granted to each of the defendants.

4. The learned trial judge erred in charging the jury that. they could convict of falsifying the books and acquit of appropriating the money to their own use as follows :

" It is for you to determine whether under the evidence, these defendants have beyond a reasonable doubt violated. the provisions of the statutes referred to or any of them. You may convict them of any one and acquit the rest, or you may. acquit them of all."

*W. Roger Fronefield* and *Albert J. Williams*, for appellants.

*W. B. Broomall*, with him *Josiah Smith*, district attorney, and *A. B. Geary*, for appellee.

OPINION BY RICE, P. J., May 14, 1906 :

The defendants were arrested and had a hearing before a justice of the peace upon the charges contained in the indictments. But the magistrate's return of the proceedings was defective in that it failed to set forth that the offenses were. committed in Delaware county, and for that reason it was quashed by the court upon the defendants' motion. Upon the

same day, by special leave of court and against the objections of the defendants, the district attorney submitted the bills to the grand jury. The objections above referred to are set forth in the first assignment of error, and were, in substance, that there was "no great public, pressing, or adequate necessity justifying such action," and that the district attorney refused upon the defendants' application "to set out or state his reasons or the necessity" therefor. The action of the court in granting special leave notwithstanding the defendants' objections, in refusing to require the district attorney to state his reasons, and in refusing to quash the indictments, are the subjects of complaint in the first three assignments of error.

We do not deem it necessary to attempt a restatement, or to enter into an extended discussion, of the modes of initiating criminal prosecutions in this commonwealth. This was done by Mr. Justice CLARK, in Commonwealth v. Green, 126 Pa. 531, and to his opinion we call attention. It is sufficient for present purposes to say that the general doctrine enunciated by Judge KING, in Lloyd & Carpenter's Case, 3 Clark, 188, relative to the discretionary power of the district attorney to prefer a bill of indictment without a previous binding over or commitment of the accused, and to the principles which ought to guide that officer in the exercise of this extraordinary power, and to the safeguards against an abuse of it, has been accepted and reiterated in the decisions of the Supreme Court and of this court, and must be regarded as the settled policy of the law in this commonwealth : Rowand v. Commonwealth, 82 Pa. 405; Commonwealth v. Green, 126 Pa. 531 ; Commonwealth v. Brown, 23 Pa. Superior Ct. 470. We have no disposition, even if we had the power, to enlarge the number of exceptional cases in which the commonwealth will be justified in departing from the usual mode of proceeding by complaint and hearing before a committing magistrate. But, as was said by Mr. Justice WOODWARD, it is apparent that upon considerations involving the maintenance of the public security, it is necessary that this extraordinary and delicate authority be lodged somewhere, and it is apparent also that it has been lodged in the prosecuting officer of the commonwealth; it is to be exercised, in the ordinary case, under the supervision of the proper court of criminal jurisdiction, and in all cases of its

exercise is subject to its revision and approval; further, the action of the officer and the court can be brought to the appellate court for purposes of review only when the abuse of their discretion has been " both manifest and flagrant : " Rowand v. Commonwealth, 82 Pa. 405. So in Commonwealth v. Green, the Supreme Court, while approving the action of the quarter sessions in quashing the bill, took pains to declare, that if the court in the exercise of its discretion had sustained the indictment, and brought the defendant to trial and conviction upon it, it was quite improbable that the Supreme Court would have disturbed the judgment; " it is only for a flagrant abuse of this discretion, as we have said, this court would interfere." A careful study of these well-considered cases leaves no room for doubt that, in stating the rule governing the review of such action, the words " manifest and flagrant " were used advisedly, and that the refusal of the appellate court to reverse and set aside the action of the district attorney, which has been approved by the quarter sessions, imports only a determination that no flagrant abuse of discretion is manifest, not necessarily that the appellate court would take the same action if the matter were committed to its discretion.    We have therefore acted upon this principle in all of the cases that have come before us, amongst which may be cited : Commonwealth v. Montross, 8 Pa. Superior Ct. 237 ; Commonwealth v. Beldham, 15 Pa. Superior Ct. 33 ; Commonwealth v. Sheppard, 20 Pa. Superior Ct. 417 ; Commonwealth v. Brown, 23 Pa. Superior Ct. 470. The reasons which influenced the district attorney to resort to this mode of procedure are not set forth in the record, nor is it a fatal objection upon appeal that the court did not require this to be done.    This point was decided in the case last cited, after a thorough and exhaustive argument by counsel and a deliberate consideration by us, and we see no reason for changing or modifying the conclusion there reached.    It necessarily follows that, upon appeal, no presumption that the district attorney did not have valid reasons for proceeding in this mode arises from his refusal to set them forth upon the record, or to state them for the information of the defendants.    There is another feature of the case to be noticed, which is that the defendants had a preliminary hearing before a magistrate upon the charges contained in the indictments.    Although, owing to the quash-

ing of the magistrate's return, the case, viewed from a technical standpoint, may perhaps be in the same situation as if the defendants had not had the opportunity, which a preliminary hearing affords, to inform themselves as to the nature of the charges and of the evidence, yet, viewed from the standpoint of substantial merit, the fact that such opportunity had been afforded them deprives their objection to the mode of procedure of much, if not all, of its force.    But apart from this consideration, and viewing this as a district attorney's bill strictly, " that is a bill sent to the grand jury by that officer upon his official responsibility and by leave of court," we are unable to conclude from the record before us that the action complained of was an abuse of discretion both manifest and flagrant.    Therefore the first three assignments are overruled.

To have a correct understanding of the question raised by the fourth assignment of error it is necessary briefly to review the evidence.    The defendants were directors of the poor for the county of Delaware, and as such received from the county a considerable sum of money to be expended by them in the performance of the duties of their office.    This money, said to amount to $40,000 or more, was deposited by them in a bank in the name of one of them as treasurer.    It was drawn out upon orders issued by the directors, and the directors kept at the county house a cashbook in which, properly, the amounts, dates, numbers, payees and purposes of these orders were set down. In the audit of their accounts for the year 1904, suspicion was directed to ten orders purporting to have been issued to different persons for different amounts, aggregating about $1,500.    These orders purported to have been indorsed by the payees and subsequently indorsed by one or the other, and sometimes by both, of the defendants.    Without going into details further, it is sufficient to say that there was abundant evidence to warrant a jury in finding that the names of these payees were fictitious; that the money received upon the orders was not received by them but was received by one or the other of the defendants ; and that the corresponding entries in the cashbook in the names of the ostensible payees, instead of in the names of the defendants, were not true entries.    Before the proceedings of the auditors were concluded the defendants repaid the amount of these orders to the poor district, and then

put in a claim for the amount of them, which was disallowed by the auditors. The orders and the bills were retained by the defendants, and since then have been in their possession or under their control. We have not undertaken to recite the incriminating testimony, but only to state in a general way the outlines of the transactions upon which the indictments were founded.

It is important to notice that the defendants were acquitted on the second and third counts of the indictments, which were drawn under section 65 of the Act of March 31, 1860, P. L. 382, and were convicted on the fifth count, which was drawn under the second section of the Act of June 12, 1878, P. L. 196. It cannot be declared as an abstract proposition that a verdict of guilty, which implies that the accused, being an officer of a quasi municipal corporation, as such received or possessed himself of the money of the corporation, otherwise than in payment to him of a just debt or demand, and, with intent to defraud, omitted to make a full and true entry thereof in the books and accounts of the corporation, would be necessarily inconsistent with a verdict acquitting him of the charge of unlawfully and fraudulently converting the money to his own use. In other words, a motion in arrest of judgment could not be sustained. This, we think, needs no elaboration. But it is argued that under the evidence in the case, a verdict of not guilty of the latter charge would necessarily imply an exoneration of the defendants, " from getting or even using the money of the poor district represented by the ten orders," and therefore it was erroneous to charge, as the court did in effect, that the jury might convict on the fifth count notwithstanding they acquitted on the second and third counts. We cannot assent to this proposition. The fallacy consists in the unwarranted assumption that the verdict of acquittal on the second and third counts necessarily implies a finding by the jury that the names of the payees in the orders were not fictitious, and that the money represented by them went to the payees and not to the defendants. It is difficult to see how the jury could find the facts necessary to a conviction on the fifth count, as they were fully warranted by the evidence in doing, without also concluding that the defendants were guilty of the charges contained in the second and third

counts; but we cannot say that this was beyond the range of possibility. It is not for us to attempt to define the processes of reasoning by which the jury reached the conclusions they did; it is sufficient to say that they are not absolutely repugnant or inconsistent. Therefore the instructions complained of were not erroneous. In effect, as shown by the verdict, they were favorable rather than prejudicial to the defendants. In conclusion, the evidence going to establish the facts essential to a conviction on the fifth count was abundant, the questions were submitted to the jury in a clear and impartial charge, and we find no error in the record for which the judgments should be reversed.

The judgment in each of the foregoing cases is affirmed and the record in each case is remitted to the court below to the end that the sentence imposed upon each defendant be fully carried into effect.