Commonwealth, Appellant, *v.* Wilson.

Argued December 27, 1938. 

 Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES,
JJ. 

*Bryan A. Hermes,* with him *Benjamin Ludlow* and
*Thomas I. Guerin,* Deputy Attorneys General, *Guy K.
Bard,* Attorney General and *James N. Lafferty,* Assist-
ant Deputy Attorney General, for appellant.

*Joseph Sharfsin,* with him *Abraham L. Shapiro* and
*Abraham Wernick,* for appellee.

PER CURIAM, January 31, 1939:
The orders quashing the indictments are severally
affirmed. An opinion giving our reason for doing so
will be filed later.

224

PER CURIAM, February 17, 1939:

These appeals were argued on the last day of our December 1938 Session at Philadelphia.

The Commonwealth asked and obtained permission to file a supplemental brief on certain points raised at the argument and the defendant was granted permission to file a reply brief. The filing of these briefs necessitated a postponement of our consideration and decision of the appeals until our next meeting on January 31, 1939, when we filed a brief opinion affirming the orders quashing the indictments, stating that an opinion giving our reason for doing so would be filed later. Our motive for doing this was to enable the Commonwealth to prepare and present other indictments promptly, if the statute of limitations would otherwise run against them.

Our reason for affirming the orders of the court below quashing the several indictments is that, in our opinion, they were presented to the August 1938 grand jury too late to warrant the legal finding of true bills upon them by that grand jury.

In most of the counties of the Commonwealth a court of quarter sessions is held four times a year. That is how its name is derived. By the Act of April 14, 1834, P. L. 333, the courts were given power to fix adjourned or special courts of quarter sessions and to continue their session as long as necessary to complete trials;[1] and in Philadelphia County they were directed to continue the session by adjournment as often as occasion shall require.[2] This was followed by the Act of March 13, 1867, P. L. 420, which provided that the sessions of the courts of oyer and terminer, general jail delivery and quarter sessions of the peace for the city and county of Philadelphia should thereafter convene on the first

---

[1] Act of 1834, supra, secs. 49, 50 and 51; Act of April 22, 1850, P. L. 543, sec. 12.

[2] Act of 1834, supra, sec. 47.

Monday of each month, instead of quarterly as previously fixed by law.

By the Act of March 18, 1875, P. L. 28, it was provided that it shall be lawful for the judges of the court of quarter sessions to direct that the grand jury be summoned to meet at such time prior to the times fixed for the holding of the terms, as they shall deem expedient; and if in the opinion of the judges the business of the said courts shall require it, the grand jury may be detained for an additional week without the issuing of a new venire.

This act was amended by the Act of April 27, 1927, P. L. 420, by adding an additional paragraph, as follows: "The judges of the courts of quarter sessions and oyer and terminer shall also have power to hold over the grand jury summoned at any term, during the interim and until the grand jury of the next succeeding term is assembled, and shall have full power, without the issuing of a new venire, to call such grand jury to assemble in session and dispose of any business properly laid before a grand jury at any regular term."

These acts are not in conflict with each other. They are remedial in nature and can both stand, and will be interpreted so as to give the court of quarter sessions the fullest possible measure of power and authority. Where such courts are held four times a year the provision added by the Act of 1927 would seem to furnish the greater authority; but where such courts are held every month, as in Philadelphia, the Act of 1875 gives express authority for continuing a grand jury for a week after the expiration of its regular session, and this is so, although another grand jury has convened in the meantime. And there is no reason whatever why the continuing grand jury should not have power to find true bills during this additional week, as respects indictments which were presented to it during its regular session, but consideration of which was not finished or completed by the time the next grand jury convened.

As to new bills of indictment, usually, there would seem to be no valid reason why they should not be presented to the new grand jury. But as to bills which were presented to a grand jury and were still under consideration when the regular term ended, the court may continue the session for another week and during that time true bills may be returned on such indictments the same as if found during the regular term or session: *Traviss v. Com.*, 106 Pa. 597. Our judgment on this point is not in accord with the learned court below. It is consonant, we think, with the view of Mr. Justice STERN, as expressed in his notable opinion in *Shenker v. Harr*, 332 Pa. 382, 2 A. 2d 298.

Pursuant to statutory authority the grand jury for the regular August 1938 Sessions convened in Philadelphia County on Monday, August 1, 1938. It was the regular grand jury, convened, *inter alia,* for the consideration of indictments lawfully submitted to it. The next regular grand jury convened on Tuesday, September 6, 1938,—Monday, September 5, Labor Day, was a holiday—, but, in the meantime, on September 1, 1938, the court of quarter sessions entered the following order:

"Whereas, the Grand Jury for the regular August Term, 1938, was legally convened and is now in session; and

"Whereas, there is unfinished business before the said Grand Jury arising out of the investigation of the Special October 1937 Grand Jury.

"Now, therefore, this 1st day of September, 1938, the court directs that the current August 1938 Grand Jury be detained to consider its unfinished business for an additional period of one week beyond its regular term, that is to say for a week beginning at 12.01 a. m., Monday, September 5th, 1938, or for so much thereof as will be required to complete its unfinished business.

"This order is directed under the provisions of the Act of Assembly of March 18, 1875, P. L. 28, Sec. 2,

and of the Act of Assembly of April 27, 1927, P. L. 420, sec. 2."

The indictments concerned in these appeals were returned as true bills by the August grand jury on September 8, 1938, within the week's extension authorized by the court for the consideration and completion of its unfinished business.

While reference was made in the court's order to certain unfinished business, "arising out of the investigation of the Special October 1937 Grand Jury," the August 1938 grand jury was not in any sense a continuation or completion of that special grand jury. The special grand jury had been called in October, 1937, to investigate certain grave conditions affecting the City and County of Philadelphia in connection with alleged gambling operations and the bribery, corruption, extortion, etc. of certain public officials concerned therewith. It had been continued and was still in session when these appeals were argued. The history of its activities and the law relating to its authority to continue its sessions are discussed and expounded in the opinion of Mr. Justice STERN, speaking for the Supreme Court, in *Shenker v. Harr et al.*, before referred to. Nothing said in this opinion is to be construed or interpreted as being in any way opposed to that opinion, with which we are in full accord.

The August 1938 grand jury was not a special investigating grand jury. It was a regular grand jury, and while indictments growing out of that October 1937 special grand jury might come before it, they could come only in two ways, viz., (1) by indictments founded on a complaint before a magistrate and return to court; and (2) by indictments presented to the grand jury by leave of court, without a prior complaint before a magistrate and holding for court, commonly known as District Attorney's bills or Attorney General's bills. If the latter, the District Attorney or Attorney General had no right or authority to send in an indictment, or

to call witnesses before the grand jury respecting it, before or until leave to present such indictment had been given by the court.

It will be noted that the order of the court of September 1, 1938 continuing or extending the August 1938 grand jury for the week beginning September 5, 1938 was limited to the consideration and completion of unfinished business, that is, business which had been presented to it by Saturday, September 3, 1938, at midnight, and was unfinished at that time. No authority to consider and pass upon new business or to consider indictments presented after that date was conferred by the order of the court of September 1, 1938. It was not drawn in the broad language of the Act of 1875, emphasized in the Shenker case, supra, authorizing the detention of a grand jury for an additional week "if in the opinion of the Judges the business (i.e. the general business) of the said courts shall require it." By the express terms of the order the August grand jury was detained to consider only "its unfinished business." Any new business, any new bills, arising or presented after that date, should therefore have been submitted or presented to the September 1938 grand jury which convened on Tuesday, September 6, 1938.

We have no doubt of the right of the District Attorney, or Attorney General, by leave of court, to present to a regularly convened grand jury bills of indictment against this defendant alleging misdemeanors in office. Art. I, sec. 10, of the Constitution expressly authorizes criminal proceedings by *information* by leave of court for *misdemeanor in office*. While this refers to *informations* as distinguished from *indictments*, (*Com. v. Francies*, 250 Pa. 496, 500, 501, 95 A. 527), it furnishes ground for the presentation to a grand jury, by leave of court, of a District Attorney's bill or an Attorney General's bill against a public official charged with misdemeanor in office, without a complaint before a magistrate and a holding for court, where deemed advisable

or necessary. But unless these bills were presented to the August 1938 grand jury prior to September 5, 1938, so that they remained as unfinished business on that date, the order of September 1, 1938 continuing and extending the session of the August 1938 grand jury for one week for the consideration and completion of unfinished business did not apply to them and had no force or effect to authorize consideration or disposition of them; that is, the August 1938 grand jury had, under the limited order of September 1, 1938, no power or authority to consider or pass upon indictments which had not been presented to it prior to September 5, 1938, when the next regular grand jury term began. Bills presented after 12:01 a. m. September 5, 1938 were not unfinished business and could not be considered.

The indictments show that leave to present them to the grand jury as Attorney General's bills was given on September 7, 1938, or after the convening of the regular September 1938 grand jury. We cannot allow the assumption that the indictments were actually presented to the August grand jury before September 5, 1938, for the District Attorney or Attorney General had no legal power or authority to send into any grand jury a bill of indictment, where there had been no complaint before a magistrate and binding over for court, and call witnesses with regard to it, before leave to present it had been given by the court. Such a course would be illegal and improper and we cannot assume it to have been done. There was no averment in the Commonwealth's answer that leave or direction to present the bills had been given by the court prior to that endorsed on the bills on September 7, 1938, and this endorsement of September 7, 1938 did not purport to ratify or approve any such action, taken without prior leave of court.

It follows that as leave to present these indictments was not given until September 7, 1938, they were not

unfinished business of the August 1938 grand jury on September 5, 1938 at 12:01 a. m. and hence were not covered by or included in the order of September 1, 1938, continuing and extending the August grand jury for the consideration and completion of unfinished business; that the August 1938 grand jury had no power or authority to consider them and find true bills, and that the motion of the defendant to quash the bills was properly sustainable on that ground. See paragraph 7 of the petitions to quash.

For this reason the orders quashing the indictments were affirmed.