## Commonwealth *v.* O'Brien, Appellant.

384

Argued March 19, 1956.  Before Hirt, Gunther, Wright, Woodside, Ervin, and Carr, JJ. (Rhodes, P. J., absent).

*W. Edward Bushong, Jr.,* for appellant.

*Herbert C. Nelson,* Assistant District Attorney, with him *Bernard E. DiJoseph,* District Attorney, for appellee.

Opinion by Woodside, J., August 17, 1956:

This is an appeal from the refusal of the court below to grant defendant's motion to quash an indictment on the ground that he was not present at a preliminary hearing.

An information was filed by a police officer before a justice of the peace of Montgomery County charging the defendant John G. O'Brien with armed robbery,

burglary and violation of the Firearms Act on August 12, 1953 in that county.

On October 21, 1953 the justice of the peace held a preliminary hearing at which the defendant was not present because he was at the time in jail in Philadelphia County awaiting trial on a charge for an offense committed there on which he was subsequently sentenced to the penitentiary where he is now incarcerated. The transcript of the justice of the peace was filed October 24, 1953. It shows that Police Lt. Frank Jackson testified at the hearing; that O'Brien had signed a statement admitting participation in the robbery and burglary; that he was arrested in Philadelphia September 19, 1953 and was being held there for a crime committed in that city, and that a warrant had been issued and lodged with Philadelphia authorities.

On the basis of the return the district attorney submitted a bill to the grand jury without special leave of court. The grand jury found a true bill on January 27, 1954 and the court issued a bench warrant for the defendant the same day.

From the time the information was made against the defendant in Montgomery County to the present time, he has been incarcerated in Philadelphia County for the offense committed there. During this time the Montgomery County authorities knew of the whereabouts of the defendant.

On September 16, 1955, over a year and a half after the indictment, but before being brought to Montgomery County to stand trial, the defendant moved to quash the indictment on the ground he was not present at a preliminary hearing.[1]

---

[1] The record does not show any intervening events but the district attorney's brief states: "On July 11, 1955, Defendant filed a motion to quash the indictment because of the delay in bringing

The basic question before us is whether a grand jury may indict, without special permission of court, a defendant who was not present at a preliminary hearing because when it was held he was in prison in another county of this Commonwealth.

It would seem that this question would long since have been settled in Pennsylvania, but it has not.

Some related principles have been established.

It is settled that a district attorney or attorney general has no authority to send to a grand jury a bill of indictment where there has been no complaint before a magistrate and binding over for court unless he first obtains leave of court to do so. *Com. v. Wilson,* 134 Pa. Superior Ct. 222, 227, 228, 229, 4 A. 2d 324 (1938).

It is also settled that a defendant is deemed to have waived the right to raise any question concerning his arrest or a preliminary hearing after he has entered a plea. *Com. ex rel. Scasserra v. Maroney,* 179 Pa. Superior Ct. 150, 154, 115 A. 2d 912 (1955); *Com. ex rel. Geisel v. Ashe,* 165 Pa. Superior Ct. 41, 68 A. 2d 360 (1949); *Com. v. Poley,* 173 Pa. Superior Ct. 331, 336, 98 A. 2d 766 (1953); *Com. v. Viscount,* 118 Pa. Superior Ct. 595, 599, 179 A. 858 (1935); *Com. ex rel. Musser v. Day,* 180 Pa. Superior Ct. 191, 119 A. 2d 811 (1956), *Com. ex rel. Rushkowski v. Burke,* 171 Pa. Superior Ct. 1, 5, 89 A. 2d 899 (1952). Judge DREW, subsequently Chief Justice of our Supreme Court, indicated in *Com. v. Murawski,* 101 Pa. Superior Ct. 430 (1931) that a deficiency in a preliminary hearing cannot be raised in

him to trial, although his own Counsel had asked for postponements. The Petition after hearing was dismissed by his Honor William F. Dannehower. Defendant then filed a Writ of Mandamus in the Supreme Court of Pennsylvania and this Petition was denied. On November 30, 1955, Defendant filed a Petition for a Writ of Certiorari to the Supreme Court of the United States, and on January 1, 1956, this Petition was denied."

a motion to quash an indictment, but only in proceedings to be discharged from custody. See also *Com. v. Gross,* 172 Pa. Superior Ct. 85, 92, 92 A. 2d 251 (1952); *Com. v. Brennan,* 193 Pa. 567, 44 A. 498 (1899); *Com. v. Schoen,* 25 Pa. Superior Ct. 211, 213 (1904); *Com. v. Poley,* supra. However, indictments have been quashed on the ground that there was no preliminary hearing. *Com. v. Green,* 126 Pa. 531, 17 A. 878 (1889).

It is also settled that one has no *constitutional* right to be present at a preliminary hearing, or, indeed, even to have one. *Goldsby v. United States,* 160 U.S. 70, 73, 16 S. Ct. 216, 40 L. Ed. 343 (1895); *Lem Woon v. Oregon,* 229 U.S. 586, 33 S. Ct. 783, 57 L. Ed. 340 (1913); *Com. ex rel. Bandi v. Ashe,* 367 Pa. 234, 80 A. 2d 62 (1951); *Com. v. Jobe,* 91 Pa. Superior Ct. 110, 115 (1927); *Clarke v. Huff,* 119 F. 2d 204 (1941); *Van Dam v. United States,* 23 F. 2d 235 (1928); *State v. War,* 38 N.J. Super. 201, 118 A. 2d 553, 557 (1955).

Not all rights, however, are constitutional rights and the question remains whether defendant has a statutory or common law right to be present at such hearing.

Preliminary hearings were unknown to the early common law. They are creatures of statutes, and it is said in 22 C.J.S., Criminal Law, §332 that in the absence of a statute no preliminary examination is necessary. A review of the statutes under which preliminary hearings developed therefore becomes important.

Strangely enough preliminary hearings did not originate as a means of protecting persons arrested for crime; but rather as an instrument to restrict the indiscriminate release of such persons.

The development of the preliminary hearing can be followed in a series of four English statutes of the 15th and 16th centuries, each of which sets forth the reason for its enactment. These statutes are printed in "The Statutes at Large from the Fifth Year of K.

Richard III to The 31st Year of K. Henry VIII" Vol. 4 and The Statutes at Large from the First Year of Queen Mary to The 35th Year of Queen Elizabeth, Inclusive, Vol. 6 published in 1763.

In 1483 the parliament of England found that "divers persons have been daily arrested and imprisoned for suspection of felony, sometime of malice, and sometime of a light suspicion, and so kept in prison without bail or mainprise, to their great vexation and trouble." Parliament thereupon authorizes justices of the peace at their discretion "to let such prisoners and persons so arrested, to bail or mainprise, in like form as though the same prisoners or persons were indicted thereof of record before the same justices in their sessions; . . ." 1 Richard III, Chapter III.

The justices, it seemed to parliament four years later, had abused the authority which it had given them. It was meant to be exercised only in cases of those "persons arrested for light suspicion of felony," but "by colour whereof afterward divers persons, such as were not mainpernable were oftentimes letten to bail and mainprise by justices of the peace, against the due form of the law, whereby many murderers and felons escaped, to the great displeasure of the King, and annoyance of his liege people: Wherefore" parliament enacted Chapter III, 3 Henry VII. This statute provided "That the justices of peace in every shire, city, or town, or two of them at the least, . . . have authority and power to let any such prisoners, or persons mainpernable by the law, . . . . to bail or mainprise, unto their next general sessions, . . ." "Such prisoners or persons", it seems related only to those persons arrested for "light suspicion" of felony. The act further required that the justice certify the case to the next general sessions of the peace "upon pain to forfeit unto the King, for every default thereupon recorded."

This did not stop the abuse of this authority by at least one of the justices of the peace who "in the name of himself and one other of the justices his companion, not making the said justice party nor privy unto the case wherefor the prisoner should be bailed, . . . set at large the greatest and notablest offenders," . . . by signing "the cause of their apprehension to be but only for suspicion of felony,"—this "to the high displeasure of Almighty God, the great peril of the King and Queen's true subjects, and encouragement of all thieves and evil doers:" "For reformation" of the evils expressed above in parliaments own words, it passed "An act touching bailment of persons" now known as Chapter XIII, 1 and 2 Philip and Mary. This was the first act providing for what is today known as a preliminary hearing, but it was limited to cases where the prisoner was admitted to bail or mainprise.

After limiting the authority of one justice to act alone, the statute provided in section IV as follows "the said justices, . . . when any such prisoner is brought before them for any manslaughter or felony, before any bailment or mainprise, shall take the examination of the said prisoner, and information of them that bring him, of the fact and circumstances thereof, and the same, or as much thereof as shall be material to prove the felony shall put in writing before they make the same bailment; (2) which said examination, together with the said bailment, the said justices shall certify at the next general gaol-delivery to be holden within the limits of their commission."

The following year parliament pointed out that the statute of 1554 requiring the justices of the peace to examine prisoners brought before them and take information from those who bring them, reduce it to writing and return it to court before admitting the prisoners to bail, was not applicable to cases where

the prisoner's were "committed to ward for the suspicion of such manslaughter or felony and not bailed," and that in such case it was "as necessary, or rather more than where such prisoner shall be let to bail." [2]

This is the statute of 2 and 3 Philip and Mary, Chapter X referred to by Blackstone in Vol. IV, page 296 as the basis for the preliminary hearing. He there describes the procedure followed in his time in this lan-

---

[2] This act after referring to the prior statute provides: "And forasmuch as the said act doth not extend to such prisoners as shall be brought before any justices of peace for manslaughter or felony, and by such justice shall be committed to ward for the suspicion of such manslaughter or felony, and not bailed, in which case the examination of such prisoner, and of such as shall bring him, is as necessary, or rather more than where such prisoner shall be let to bail or mainprise; (2) be it therefore enacted by the authority of this present parliament; That from henceforth such justice or justices before whom any person shall be brought for manslaughter or felony, or for suspicion thereof, before he or they shall commit or send such prisoner to ward, shall take the examination of such prisoner, and information of those that bring him, of the fact and circumstance thereof, and the same, or as much thereof as shall be material to prove the felony, shall put in writing within two days after the said examination; (3) and the same shall certify in such manner and form, and at such time, as they should and ought to do, if such prisoner so committed or sent to ward had been bailed or let to mainprise, upon such pain as in the said former act is limited and appointed for not taking, or not certifying, such examinations as in the said former act is expressed. (4) And be it further enacted, That the said justices shall have authority by this act, to bind all such by recognisance or obligation, as to declare any thing material to prove the said manslaughter or felony against such prisoner as shall be so committed to ward, to appear at the next general gaol-delivery to be holden within the county, city or town corporate where the trial of the said manslaughter or felony shall be, then and there to give evidence against the party; (5) and that the said justices shall certify the said bonds taken before them, in like manner as they should and ought to certify the bonds mentioned in the said former act, upon pain as in the said former act is mentioned, for not certifying such bonds as by the said former act is limited and appointed to be certified."

guage: "The justice before whom such prisoner is brought is bound immediately to examine the circumstances of the crime alleged [3] . . . If upon this inquiry it manifestly appears that either no such crime was committed or that the suspicion entertained of the prisoner was wholly groundless in such case only is it lawful totally to discharge him. Otherwise he must either be committed to prison or give bail."

Blackstone also states on page 318 that where a defendant "hath fled or secrets himself in capital cases, or hath not in smaller demeanours been bound over to appear at the assizes or sessions, still an indictment may be preferred against him in his absence;"

After the signing of the Declaration of Independence the Commonwealth of Pennsylvania finding itself without any adopted or enacted law, passed the Act of January 28, 1777, 1 Sm. L. 429, 46 PS §152 by virtue of which the common law and such of the statute laws of England as had theretofore been in force in the province, with certain enumerated exceptions, were declared to be in force and binding upon the inhabitants of the newly created commonwealth.

Doubt having arisen after a few years as to which English statutes were applicable to the new government and which should be considered as a part of the law of this Commonwealth, the legislature, by the Act of April 7, 1807, directed the judges of the Supreme Court to report to the legislature which of the English statutes were then in force in this Commonwealth. In the report made by the judges found in the appendix of 3 Binney's Report, 616, 620, there were included three of the above acts: the statute of Third Henry VII, Chapter

---

[3] That "immediately" meant "without *any* delay" is indicated by the concern of the court over the question of whether a constable who arrested a person for misbehaving in a church was justified in detaining him until the service was over before taking him before a magistrate. 2 B. & C. 699.

3, the statute of First and Second Philip and Mary, Chapter 13, and the statute of Second and Third Philip and Mary, Chapter 10. These statutes thus became a part of the law of this Commonwealth, and constitute the basic authority for our preliminary hearings.

The Pennsylvania legislature passed no act dealing generally with preliminary hearings. The Act of June 11, 1885, P.L. 110, 42 PS §722 required justices of the peace to make certain entries upon their dockets in criminal cases and to return to the clerk of the courts of quarter sessions a true transcript from the docket.

The Act of May 14, 1915, P.L. 499, 42 PS §1080 provided: "hereafter, upon a preliminary hearing before a magistrate for the purpose of determining whether a person charged with any crime or misdemeanor against the laws, except murder, manslaughter, arson, rape, mayhem, sodomy, buggery, robbery, or burglary, ought to be committed for trial, the person accused, and all persons on behalf of the person accused, shall be heard if the person accused shall so demand."

The Act of May 27, 1919, P.L. 306, 19 PS §21 provided that in prosecutions for assault and battery the justice of the peace should "enter into a full hearing and investigation of the facts charged, and shall only bind over the defendant to the said court when he is satisfied from the evidence that the prosecution is reasonably well founded."

It follows from the Act of 1915, supra, that in cases of robbery and burglary the person accused has no right to be heard at a preliminary hearing by himself or witnesses.

From inquiry and from our own knowledge we find that the procedure followed prior to indictment of persons imprisoned in another county of the Commonwealth varies from county to county and even with

changing district attorneys and judges within the same county.

In some counties the district attorney has the court issue a writ of habeas corpus ad respondendum in all cases where the defendant is a prisoner in another county and, unless waived by the defendant, brings him before the magistrate for a preliminary hearing. In other counties the district attorney does as was done here, holds a hearing in the absence of the defendant, has a return made by the magistrate and presents an indictment on the basis of the return without first obtaining permission of court. In still other counties the procedure is similar to that followed in this case except that permission is obtained from the court to present the bill to the grand jury. Still another practice sometimes followed is to hold no preliminary hearing and to secure indictment through a district attorney's bill, presented always, of course, only after permission from the court.

Because of the variation in practice and because little has been written concerning the development of preliminary hearings we deem it advisable to discuss the law in some detail rather than to dispose of this case summarily, as could have been done for reasons hereinafter set forth.

It might be noted here before further considering the Pennsylvania law that "it is well settled that in a federal court a defendant may be indicted without a preliminary hearing and without notice to the defendant." And it has been held that where a prisoner was not arrested prior to the indictment because he was then serving a sentence in a state penitentiary no preliminary hearing is required. *U. S. v. Gray,* 87 F. Supp. 436 (1949); *Yodock v. U. S.,* 97 F. Supp. 307, 310 (1951).

The right of an accused to a preliminary hearing, with certain exceptions, has become a part of the law

of this Commonwealth, and ordinarily such hearing cannot be held in the absence of the defendant. Although this is the general rule there are a number of exceptions.

Even in a capital case our Supreme Court has held that the defendant is not denied any of his rights when he is not given a preliminary hearing before a magistrate and in another murder case it was so held where there had been a coroner's inquest. *Com. v. Brennan,* 193 Pa. 567, 44 A. 498 (1899) ; *Com. ex rel. Bandi v. Ashe,* 367 Pa. 234, 238, 239, 80 A. 2d 62 (1951). Neither was it necessary to hold a preliminary hearing where a constable's return was made against one for selling liquor to minors. *McCullough v. Com.,* 67 Pa. 30 (1870).

There are times when the attorney general or district attorney may, with permission of the court, present a case to the grand jury without the necessity of a preliminary hearing. *Rowand v. Com.,* 82 Pa. 405, 407 (1876). It is not fatal if the district attorney's reasons for presenting the bill without a preliminary hearing do not appear of record. *Com. v. Ramsey,* 42 Pa. Superior Ct. 25, 32 (1910).

In *Com. v. Kaufman,* 9 Pa. Superior Ct. 310 (1899), an indictment against a guardian for embezzlement of his ward's money was sustained where the indictment was preferred in pursuance of an order of court made upon petition of the district attorney and private counsel of the prosecutor and without notice to the defendant.

In *Com. v. Green,* 126 Pa. 531 (1889), where an indictment for keeping a disorderly house was quashed, the court said that the usual method pursued in criminal procedure of complaint, warrant, arrest and hearing has three exceptions which were recognized by Judge KING in a charge to a grand jury in 1845 which has frequently been referred to by the courts. They are (1) "where

criminal courts, of their own motion, call the attention of grand juries to, and direct, the investigation of, matters of general public import, which, from their nature and operation in the entire community, justify such intervention," but this power should be exercised only in the investigation of general and public evils such as great riots, general public nuisances and flagrant vices; (2) where the attorney general or district attorney prefers an indictment before a grand jury to be exercised where there is occasion for great haste or where the exigencies of the case and the public interests may reasonably require district attorney's bills in which case the procedure is always under the supervision of the court; (3) where the grand jury takes notice of the offense from their own knowledge and observation.

In all of the above cases in which the defendant was denied a preliminary hearing he was, of course, denied the right to be heard by himself or his counsel, to demand the nature or cause of accusation, and to meet the witnesses face to face, until after the bill had been found by the grand jury. *McCullough v. Com.*, supra.

In *Com. v. McCormick*, 71 Pa. Superior Ct. 567 (1919), it was held that where one charged with a crime escapes from an officer, after being notified that he is under arrest, he becomes a fugitive from justice and an indictment charging him with the offense committed can be sent to the grand jury without a preliminary hearing or leave of court.

It has apparently been the practice since the time of Blackstone, and throughout the history of this Commonwealth, to indict fugitives without a preliminary hearing, or at least without the defendant being present at one.

It is argued here that the defendant before us was a fugitive from justice. This might possibly be true, but all the record indicates is that at the time of the hear-

ing he was in jail in Philadelphia County awaiting trial on an offense he was charged with having committed there. On the record before us we cannot say that the officials of Montgomery County were justified in dealing with the defendant as a fugitive merely because he was in jail in another county. It does not follow, however, that a different procedure must be pursued when one is in prison in another county than when one is a fugitive.

A preliminary hearing is held primarily to prevent the detention of a person for a crime which was never committed or of a crime with which there is no evidence of his connection. It is primarily to prevent a person from being imprisoned or required to enter bail when there is no evidence to support a charge against him. *United States v. Gray,* 87 F. Supp. 436 (1949).

It is not necessary to have a preliminary hearing in order to furnish information to the prisoner of the offense charged including the time, place, and circumstances involved. This information becomes available to him in the indictment and if not sufficiently detailed he can obtain through the court a bill of particulars to further enable him to prepare his defense. *Com. v. Hershman,* 171 Pa. Superior Ct. 134, 139, 90 A. 2d 314 (1952) ; *Com. v. Buford,* 179 Pa. Superior Ct. 312, 315, 116 A. 2d 759 (1955).

If the defendant had been released from incarceration for his Philadelphia offense before the date when he was indicted and the bench warrant issued for him in Montgomery County, he could not have been held in prison for the Montgomery County offense to await action of the grand jury there, unless, he were given a preliminary hearing at which he would have had a right to be present. If upon receiving a discharge from prison for his Philadelphia offense he would have been kept in prison without having been given such hearing

he could have obtained his release upon a writ of habeas corpus, or upon a motion to discharge him from custody (but not from recognizance. *Com. v. Weinstein,* 177 Pa. Superior Ct. 1, 5, 109 A. 2d 235 (1954)).

Upon review of an order to quash an indictment, especially where a bill is submitted under the supervision of the court, this Court will not set aside the action of the lower court except for "an abuse of discretion both manifest and flagrant." *Com. v. Ramsey,* 42 Pa. Superior Ct. 25, 32 (1910); *Com. v. Hackney,* 117 Pa. Superior Ct. 519, 522, 178 A. 417 (1935); *Com. v. Kilgallen,* 175 Pa. Superior Ct. 52, 56, 103 A. 2d 183 (1954); *Com. v. Sharpless,* 31 Pa. Superior Ct. 96, 99 (1906); *Com. v. Biancone,* 175 Pa. Superior Ct. 6, 8, 102 A. 2d 199 (1954).

The court should not sustain a motion to quash an indictment except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights. *Com. v. Brownmiller,* 141 Pa. Superior Ct. 107, 116, 14 A. 2d 907 (1940).

It is our opinion that in this case no substantial rights of the defendant have been violated. At no time has he been denied his liberty as a result of the charges brought against him in Montgomery County, or even been required to enter bail by virtue of them. He has no constitutional right to face his accusers *at a preliminary hearing.* The indictment gives him notice of the charges against him and the information necessary to enable him to prepare his defense, and even if it would not, he could secure a bill of particulars upon application to the court. He has not been denied sufficient time to prepare his defense. That there is a prima facie case against him is established by the grand jury's indictment. *United States v. Fitzgerald,* 29 F. 2d 573 (1928).

As said above, when a district attorney submits a bill to the grand jury without a preliminary hearing it is under the supervision of the court, and he must obtain permission of the court to submit the bill. When the presentment to the grand jury is made upon a return of a justice of the peace after a hearing it is not necessary for the matter to be presented to the court prior to being brought before the grand jury. In this case there was a preliminary hearing, although the defendant was not present, and the matter was presented to the grand jury on the basis of the return of the justice of the peace.

In some counties it is the practice to obtain permission of the court for the submission of such bills to the grand jury and in other counties it is not. We think permission of the court should be obtained. In this way the discretion of the lower court can be exercised, and if that court feels that under the circumstances of the particular case it would not be just to present the bill to the grand jury without first bringing the defendant into the county for a preliminary hearing, it can withhold its approval to the submission of the bill and issue a writ to have the defendant brought into the county for a preliminary hearing.

It is not necessary, however, for us to quash the indictment in this case on the ground that the bill was not submitted to the court before it was presented to the grand jury. The court below refused to quash this indictment, and this was equivalent to giving its sanction to submitting the bill to the grand jury.

In *Com. v. Sheppard*, 20 Pa. Superior Ct. 417, 419 (1902), this Court affirmed an order quashing a bill of indictment, sent before the grand jury without a preliminary hearing or the sanction of the court. The court there stated: "To hold that it was reversible

error to quash the indictment would be to make the court subservient to the district attorney in such matters, and to declare, impliedly, that if the sanction of the court had been asked before the indictment was sent up, it would have been its imperative duty to grant it. . . . *where the indictment is sent up by the district attorney without first obtaining the leave of the court, the discretion of the court may be invoked, and is exercisable upon a motion to quash. If the court refuses to quash, this, ordinarily, is equivalent to giving its sanction. If the court sustains the motion to quash, this is tantamount to refusing its approval of the action of the district attorney. In either case the action of the court is not reviewable on appeal, except for manifest and flagrant abuse of discretion."* (Emphasis supplied) See *Com. v. Beldham,* 15 Pa. Superior Ct. 33 (1900) ; *Com. v. Brown,* 23 Pa. Superior Ct. 470, 496, 497 (1903).

When the lower court refused to quash the indictment it thus was equivalent to giving its sanction to the presentation of the bill, and, as the defendant was in prison in another county and he was not kept in prison or required to enter bail *on this offense* prior to indictment, we see no manifest and flagrant abuse of discretion by the lower court in refusing to quash the indictment on the ground the defendant was not present at the hearing.

There is another reason why the indictment should not be quashed in this case. The motion to quash an indictment must be made promptly, and if it is not made promptly it will not be granted. *Com. v. Taylor,* 65 Pa. Superior Ct. 113, 119 (1916) ; *Com v. Russo,* 177 Pa. Superior Ct. 470, 477, 111 A. 2d 359 (1955) ; *Com v. Windish,* 176 Pa. 167, 34 A. 1019 (1896) ; *Com. v. Murawski,* supra. Appellant here waited until over 18 months after the indictment before making this motion

to quash it. In the meantime he took other action in an effort to avoid this prosecution. Under the circumstances this motion came much too late.

The district attorney states in his brief that on July 11, 1955 a prior motion to quash the indictment was made by the defendant on the ground of delay in bringing him to trial, and that this motion was dismissed. Neither the printed record nor the official record submitted to this Court shows any motion to quash prior to the one before us marked as having been filed September 16, 1955. If a previous motion to quash was filed it was incumbent upon the defendant to disclose all his reasons in the first motion, and he must be presumed to have waived any reason which reasonable diligence would have revealed to him. *Com. v. Haines,* 57 Pa. Superior Ct. 616, 620, 621 (1914), but for the purpose of this appeal we must accept the record as correct and therefore cannot base our decision on this principle.

Order affirmed.