# Commonwealth ex rel. Blackman v. Banmiller

*Robert Blackman,* p. p., relator.

*William H. Wolf, Jr.,* Assistant District Attorney, *Arlen Specter,* Assistant District Attorney, *Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth.

SLOANE, P. J., April 7, 1961.—Relator filed what he terms a "Petition for Writ of Error Coram Nobis and a Motion to Vacate and Set Aside Judgment." We denied a rule to show cause why the petition should not be granted; we dismissed the writ.

Essentially, the petition in its main consideration is a repetition of another filed by relator a little over a year ago. That one was entitled simply "Writ of Error," but since any appeal period had long expired, it

was treated as a petition for writ of error coram nobis. That petition was dismissed in an opinion dated April 4, 1960. The two petitions are virtually alike, except as noted below, and the earlier decision, which was not appealed, disposes of most of the contentions made by relator in the present writ. "A petition for writ of habeas corpus which is repetitious of previous petitions is properly refused": Commonwealth ex rel. Cox v. Banmiller, 195 Pa. Superior Ct. 218, 220.

Relator now does bring forward contentions properly raised by habeas corpus though he does not so denominate his writ, and comment may be made as to these. First, he makes the bald averment that he was "coerced by court officials" into changing his plea from "not guilty" to "guilty." The assertion is without even hint of fact. The record shows relator was represented by counsel; the general plea of guilty to murder was made and entered with their approval, and we take it represented their full thinking and proper judgment; no appeal was taken upon sentence in 1948. Cadit quaestio.

There is an allegation that relator was not given a prompt preliminary hearing. The unlawful homicide in this case occurred September 28, 1946. Relator fled to Roxborough, N. C. While a fugitive, and as a fugitive, he was indicted on October 31, 1946, in two indictments, one charging murder, and the other voluntary and involuntary manslaughter. He remained away, a fugitive, until he was apprehended in North Carolina in early March 1948. He was brought to Philadelphia; he was committed to prison and on March 23, 1948, he was arraigned before President Judge Oliver and pleaded "not guilty." On April 14, 1948, with counsel, he withdrew his plea of "not guilty" and pleaded guilty to murder generally before Kun, Flood, and Sloane, JJ. These three judges "after a full and complete hearing of all the evidence both

for the Commonwealth as well as for the defendant [adjudged] the defendant Guilty of Murder in the First Degree" and imposed the sentence of life imprisonment.[1]

Relator cannot complain that he had no preliminary hearing before indictment when his own disappearance and self-initiated absence made a preliminary hearing impossible. The district attorney had the right to present bills before the grand jury while relator was a fugitive, and after true indictments were brought, there was no need for a preliminary hearing. See Commonwealth ex rel. Bandi v. Ashe, 367 Pa. 234, an affirmance on the opinion of the court below. See also Commonwealth v. O'Brien, 181 Pa. Superior Ct. 382, appeal dismissed, 389 Pa. 109.[2] Further, relator did not move to quash the indictments before his trial, and it is now too late either by habeas corpus (or coram nobis, his present writ) to do so.

No prejudice resulted to relator from the fact that some three weeks elapsed between the time he was returned to Philadelphia and his arraignment. There is no claim of illegally obtained evidence or involuntary confession during that period.

Without merit is relator's claim that he was compelled to testify against himself and his privilege against self-incrimination was violated. He pleaded guilty. "What the constitution and the Act of 1887

---

[1] Thirteen years have gone their way. President Judge Kun is dead; President Judge Flood is on the Superior Court; mine is the only signature.

[2] The Supreme Court said (p. 110): "It was not necessary for the Superior Court to have determined the substantive question," and that the Superior Court should have quashed the appeal (p. 111). But the case is being cited. See Commonwealth ex rel. Nichols v. Lederer, 193 Pa. Superior Ct. 482, 489; affirmed 404 Pa. 218.

[19 P.S. §631] guarantee is the protection of a witness from incriminating himself. Where he has already done so by a solemn admission of guilt in a plea to the charge, he must be regarded as having waived his privilege, for any testimony he could give, necessarily would be less incriminating in degree than his absolute plea of guilty to the charge": Commonwealth v. Tracey, 137 Pa. Superior Ct. 221, 225.

After his plea of guilty and after the Commonwealth had introduced its evidence on the murder indictment, relator was called by his counsel to testify in mitigation. He tried to show the killing was one in self-defense; rather than incriminate himself, he tried to exculpate himself despite his plea. His effort was meager. The testimony we fully believed was this: The victim had no weapon; several persons, guests of relator, were in the room; relator walked into another room, came back, and "from his hip pocket he pulls this gun, and I got a glimpse of it, and I screamed, and Louis turned around with his hands this way (indicating), and he pulled the trigger. So, Louis turned and fell; and fell towards him": N. T. 5.

Relator shot close to the heart and death was quick. If, upon relator's testimony, his counsel thought self-defense was adequate, they would have moved for a withdrawal of the plea of guilty; more, if the court thought so, ex mero motu, the plea would have been set aside.

Relator's petition is largely an analysis of the evidence adduced on his guilty plea; there is no submission of alleged facts which were not then known and could not have been known to him; and there is his contention that the three judges should not have found a crime higher than voluntary manslaughter or involuntary manslaughter. We said before, "A re-reading of the record discloses that the evidence against

petitioner was abundant and the verdict clear." The record is clear though not large; it does not have to be heavy to be weighty.

Debet esse finis litium. If relator feels that his time for release has come, he can well be apprised of his privilege to apply for commutation.

Accordingly, relator's petition for a writ of error coram nobis was dismissed.